**UNITED STATES of America ex rel. Joseph BOMBACINO, Petitioner-Appellee,**

v.

**Peter BENSINGER, Respondent-Appellant.**

No. 73–1175.

United States Court of Appeals, Seventh Circuit.

Argued Jan. 9, 1974.

Decided June 19, 1974.

William J. Scott, Atty. Gen., Charles H. Levad, Asst. Atty. Gen., Chicago, Ill., for respondent-appellant.

Patrick A. Tuite, Chicago, Ill., for petitioner-appellee.

Before CUMMINGS and STEVENS, Circuit Judges, and GRANT,* Senior District Judge.

STEVENS, Circuit Judge.

The district court concluded that there was a constitutional defect in the statutory procedure by which Illinois determined to prosecute petitioner as an adult rather than as a juvenile; accordingly, the court issued a writ of habeas corpus ordering him released from custody. Since we find no constitutional infirmity in the Illinois procedure as it was applied in petitioner's case, we reverse.

In 1967 petitioner, who was then 16, was arrested in connection with the beating of another youth. A delinquency petition filed in the juvenile court charged him and two other boys with aggravated battery. After the victim died, the State's Attorney of Cook County moved, pursuant to a statutory provision which has since been amended,[1] to transfer the case to the Criminal Division of the Circuit Court of Cook County. Petitioner's counsel objected to the transfer. After hearing oral argument, but without receiving any evidence, the juvenile court granted the prosecutor's motion. The three boys were then indicted for murder. Two were acquitted; the jury found petitioner guilty of voluntary manslaughter. He received a sentence of one to five years in the custody of the Department of Corrections. On appeal, the Illinois Supreme Court affirmed, expressly holding that the transfer procedure was not in conflict with Kent v. United States, 383 U.S. 541, 86 S.Ct. 1045, 16 L.Ed.2d 84.[2]

In *Kent*, the Supreme Court held that the juvenile court of the District of Columbia could not waive jurisdiction over a minor charged with a criminal offense without first affording the minor a hearing. Kent had been afforded no hearing; the juvenile judge's *ex parte* decision was inadequate because his counsel was denied access to records considered by the judge, because the judge had an inadequate opportunity to consider the issue in an unhurried and impartial manner, and because no statement of reasons supported the decision of the juvenile court.[3] The Supreme Court's holding in *Kent* rested explicitly on the language of the District of Columbia statute.[4] At several points in the *Kent* opinion,[5] as well as in In re Gault, 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527, however, the Court indicated that such proceedings must comport with the basic

---

* Senior District Judge Robert A. Grant of the Northern District of Indiana is sitting by designation.

1. The statutory procedure which governed petitioner's transfer provided:

   If a petition alleges commission by a minor 13 years of age or over of an act which constitutes a crime under the laws of this State, the State's Attorney shall determine the court in which that minor is to be prosecuted; however, if the Juvenile Court Judge objects to the removal of a case from the jurisdiction of the Juvenile Court, the matter shall be referred to the chief judge of the circuit for decision and disposition. If criminal proceedings are instituted, the petition shall be dismissed insofar as the act or acts involved in the criminal proceedings are concerned. Taking of evidence in an adjudicatory hearing in any such case is a bar to criminal proceedings based upon the conduct alleged in the petition.

Ill.Rev.Stat., Ch. 37, § 702-7(3) (1967). Effective July 31, 1967, the statute was amended to provide:

   If a petition alleges commission by a minor 13 years of age or over of an act which constitutes a crime under the laws of this State, and, on motion of the State's Attorney, a Juvenile Judge, designated by the Chief Judge of the Circuit to hear and determine such motions, after investigation and hearing but before commencement of the adjudicatory hearing, finds that it is not in the best interests of the minor or of the public to proceed under this Act, the court may enter an order permitting prosecution under the criminal laws.

Ill.Rev.Stat., Ch. 37, § 702-7(3) (1971).

2. See People v. Bombacino, 51 Ill.2d 17, 280 N.E.2d 697 (1972), cert. denied, 409 U.S. 912, 93 S.Ct. 230, 34 L.Ed.2d 173.

3. 383 U.S. at 546, 554.

4. See 383 U.S. at 556.

5. See 383 U.S. at 553, 554, 555 and 556.

requirements of the Due Process Clause.[6]

There is some uncertainty about the impact of the Due Process Clause on the procedure followed by a state in determining whether to transfer a youth from the jurisdiction of a juvenile court to that of a court of ordinary jurisdiction. There is respectable authority for the view that the determination may be committed entirely to the discretion of the prosecutor.[7] Under this view, procedural safeguards would not be constitutionally required unless the state elected to provide for judicial participation in the transfer decision. Since the Illinois procedure under review in this case did provide that the juvenile judge could object to a decision by the State's Attorney to transfer,[8] for purposes of our decision we may assume that the transfer proceeding is of such critical importance to the juvenile[9] that any fundamental procedural unfairness in that proceeding will require a subsequent conviction to be set aside.[10]

We find no such unfairness in the record before us. Petitioner made only two objections to the proceedings which resulted in his transfer: first, that no evidence was heard; and, second, that the judge gave no statement of reasons for his decision.

There are two aspects to the argument based on the absence of an evidentiary hearing. It is first significant that the court did not refuse to hear any evidence offered on behalf of the petitioner because no such offer was made. In oral argument his counsel made certain representations which, since they were unchallenged, presumably were accepted as true by the judge. Although petitioner's guilt or innocence was in dispute, the facts concerning the juvenile's age, education, family background, and the absence of a prior record, appear to have been undisputed. We find nothing in the record to indicate that petitioner

---

6. "Although our decision [in *Kent*] turned upon the language of the statute, we emphasized the necessity that 'the basic requirements of due process and fairness' be satisfied in such proceedings [383 U.S. at 553]." 387 U.S. at 12.

7. The Court of Appeals for the Fourth Circuit, sitting *en banc*, concluded that confining the decision to transfer totally to the prosecutor's discretion did not violate the Due Process Clause. Cox v. United States, 473 F.2d 334 (1973). In People v. Jiles, 43 Ill. 2d 145, 251 N.E.2d 529, 531 (1969), Justice Schaefer expressed the same view: "While there would probably be almost universal agreement that it is desirable for a State to maintain a juvenile court and to establish special facilities for the treatment of a separate category of 'juvenile delinquents', we are aware of nothing in the constitution of the United States . . . that requires a State to do so. Similarly, while it may be highly desirable to commit to the judge of a specialized juvenile court the determination of whether or not a particular juvenile is to be prosecuted criminally, we are aware of no constitutional requirement that a State must do so." Although these authorities appear to support the proposition that transferring a juvenile offender from the jurisdiction of the juvenile court to that of the adult court may be committed to prosecutorial discretion without regard to the seriousness of the offense charged, neither those courts, nor we, have had to consider whether a relatively minor offense might raise a different issue.

8. The statute set forth in n. 1, *supra*, has been construed by the Illinois courts to provide for the exercise of prosecutorial discretion, controlled by the power of the juvenile judge to object to transfer. People v. Jiles, *supra* n. 7, 251 N.E.2d at 531; People v. Bombacino, *supra* n. 2, 280 N.E.2d at 699. In *Bombacino, Kent* was distinguished on the ground that the discretion under the District of Columbia statute there involved was vested in the juvenile court, not the prosecutor.

9. "Juvenile status is, in effect, a basis upon which a youthful offender can plead diminished responsibility for his unlawful act. If he can show that juvenile jurisdiction should not be waived by the court, he is not subject to the usual adult penal sanctions." Kemplen v. State of Maryland, 428 F.2d 169, 175 (4th Cir. 1970). See also Powell v. Hocker, 453 F.2d 652, 654 (9th Cir. 1971).

10. *Cf.* Kirby v. Illinois, 406 U.S. 682, 92 S. Ct. 1877, 32 L.Ed. 411.

was denied the opportunity to adduce evidence relating to the transfer issue.

■ At the oral argument before the juvenile judge, petitioner argued that the prosecutor should be required to introduce evidence to show probable cause that the juvenile was guilty of a criminal offense. Quite clearly, under the Illinois statutory procedure, such evidence was unnecessary.[11] We find nothing in either the *Kent* opinion or in the concept of fundamental fairness which mandates such a hearing before the jurisdiction of the juvenile court may be waived.[12] Of course, before an indictment can be returned, evidence of probable cause, sufficient to satisfy the grand jury, must be presented. That procedure adequately protects a person's rights; there is no constitutional requirement that a probable cause showing must be made twice.

■ We are also satisfied that there is no inflexible requirement that a statement of reasons always be given by a juvenile judge before allowing a transfer to occur. The need for a statement of reasons in any procedural context must be evaluated in the light of the function such a statement would perform. We have recognized the importance of providing uncounselled laymen with a written explanation of decisions denying parole,[13] or denying a Selective Service reclassification,[14] and are aware of the desirability of such explanations in a prison disciplinary context.[15] In

11. Indeed, had evidence of that character been presented, it might have had the effect of commencing an adjudicatory proceeding, thus barring subsequent criminal prosecution. See the statute applicable to petitioner's case, *supra* n. 1. The new statute, also quoted in n. 1, *supra*, contains the same requirement. *Cf.* People v. DePoy, 40 Ill.2d 433, 240 N.E.2d 616 (1968), in which the court held that a hearing in which evidence was taken to determine whether a juvenile should be held in custody pursuant to Ill. Rev.Stat., Ch. 37, § 703–5(2), did not constitute an "adjudicatory hearing" for purposes of § 702–7(3). See also Jones v. Breed, 497 F.2d 1160 (9th Cir., 1974).

12. Due process is, of course, a flexible concept; the procedural safeguards which are required differ in different circumstances, See, *e. g.*, Morrisey v. Brewer, 408 U.S. 471, 480, 92 S.Ct. 2593, 33 L.Ed.2d 484; Gagnon v. Scarpelli, 411 U.S. 778, 790, 93 S.Ct. 1756, 36 L.Ed.2d 656.

13. In King v. United States, 492 F.2d 1337, 1340–1341 n. 11 (7th Cir. 1974), we quoted a report on "Federal Parole Procedures," 25 Ad.L.Rev. 459, 484–485 (Fall, 1973), to the following effect:

"Giving reasons for denying parole is desirable for both rehabilitational and legal reasons. A prisoner may feel less resentful of a negative decision if he knows the reasons for it, and in planning his activities in the institution he ought to understand clearly what will help him to obtain an early parole. When the nature of his crime is such that early parole is not likely in any event, he should be protected from unrealistic hopes that can only lead to disappointment and bitterness. All this is the job of a prison counselor in any case, but the Parole Board can make that job much easier by formally stating its reasons.

"From the legal standpoint, requiring a statement of reasons makes it possible to check abuse or error. There is no way to discover if the Board is denying parole for an unconstitutional or improper reason if the Board never gives reasons for its decisions. It is not to impugn the good faith or competence of the Board to suggest the possibility that in some cases it might rely on reasons for denying parole that the courts would feel were improper or unconstitutional if they knew of them."

14. Without a statement of the reasons why a Selective Service Board rejected a facially sufficient request for conscientious objector status, "the court can not otherwise determine with any degree of assurance that the decision really made by the board properly supported the rejection and had a basis in fact. . . ." United States v. Lemmens, 430 F.2d 619, 624 (7th Cir. 1970).

15. Although the opinion in Miller v. Twomey, 479 F.2d 701 (7th Cir. 1973), did not specify a written statement of reasons as one of the bare minima that must accompany the substantial deprivation of the "liberty" retained by a prison inmate, this element of procedural fairness was among those which the district courts were directed to evaluate on remand during the proceedings relating to remedy. 479 F.2d at 716–719.

such situations the statement enables the layman both to obtain meaningful appellate review and to know the standards of the decision maker to which he must attempt to conform his conduct. But no appellate review lay from an order of transfer under Illinois law applicable to petitioner's case,[16] and the decision included no prescription for future conduct. Moreover, a statement of reasons is less necessary when the person affected is represented, as was petitioner in this case, by competent counsel.

We are well aware of the significant value of a statement of reasons in the decisional process of any case because such a statement always reduces the risk that the decision may be, or may appear to be, arbitrary. Nevertheless, there are so many aspects of the judicial process in which critical decisions have traditionally been made without explanation, that we could not properly hold that a statement is constitutionally mandated simply as a safeguard against real or apparent arbitrariness. Unlike *Kent*, in which the decision to transfer was for the juvenile judge and the Supreme Court apparently had some doubt as to whether he had had the opportunity to consider it sufficiently,[17] the present case involves a statutory scheme in which the role of the judge was confined to supervising the exercise of prosecutorial discretion and the undisputed fact that the judge was given, by the oral argument he heard, sufficient opportunity to consider whether objection was appropriate. In this case the absence of a statement of reasons cannot be termed fundamentally unfair.

Since we find no essential unfairness in the record before us, the judgment of the district court must be

Reversed.

---

16. See People v. Jiles, *supra* n. 7.

17. See the Court's footnote 5 in *Kent*, 383 U.S. at 546; and 383 U.S. at 555–556.