Patrick Ronald RUSSELL, Appellant,

v.

Robert PARRATT, Warden, Nebraska Penal and Correctional Complex, Appellee.

No. 76–1313.

United States Court of Appeals, Eighth Circuit.

Submitted Sept. 16, 1976.

Decided Oct. 28, 1976.

Bennett G. Hornstein, Asst. Public Defender, Omaha, Neb., for appellant; Frank B. Morrison, Douglas County Public Defender, on the brief.

Ralph H. Gillan, Asst. Atty. Gen., Lincoln, Neb., for appellee; Paul L. Douglas, Atty. Gen., on the brief.

Before BRIGHT and WEBSTER, Circuit Judges, and TALBOT SMITH,* Senior District Judge.

TALBOT SMITH, Senior District Judge.

The appellant before us (hereafter defendant), Patrick Ronald Russell, seeks habeas corpus relief from his conviction, in the District Court of Douglas County, Nebraska, for first degree murder. The United States District Court for the District of Nebraska[1] denied relief. We affirm.

The essential facts underlying the conviction are not complex and were summarized by the Nebraska Supreme Court as follows:

---

* TALBOT SMITH, Senior District Judge, Eastern District of Michigan, Southern Division, sitting by designation.

1. The Honorable Robert V. Denney.

On November 10, 1973, Joseph Matthew Edmonds, an 8-year-old boy, was reported missing in Omaha, Nebraska. A police investigation was started on the following day. On Tuesday, November 13, 1973, at approximately 3:30 p. m., the boy's body was found on the floor of a bedroom in a vacant apartment at 1619 California Street in Omaha, Nebraska. A length of telephone cord was around his neck and medical evidence established that death was caused by strangulation approximately 72 hours before the discovery of the body.

A coincidental chain of events led to the interrogation and implication of the defendant. At approximately 3 p. m. on the afternoon of November 13, the daughter of the owner of an automobile observed an individual attempting to break into her father's automobile in downtown Omaha. An officer of the Omaha police department was called and the defendant, a 17-year-old boy, was interrogated when he was located in a nearby store. The car owner declined to press charges for the break-in, and the police officer decided not to pursue the matter, but did make out an information report and took note of the defendant's address. The officer also noted that the defendant appeared to be in a deranged mental condition, although he appeared to understand the officer's questions.

When the officer returned to central police station at about 4 p. m., he discovered that the body of the Edmonds boy had just been found and noticed that the address was close to the address he had just noted as the defendant's address. The officer's information report generated additional investigation of the defendant. Early that evening two officers of the police department went to the residence where the defendant lived with his mother and brother, and said they wanted to take the defendant to the police station to talk to him about the automobile break-in. The residence was in the same apartment complex where the boy's body had been found.

\* \* \* \* \* \*

The District Court, after trial, denied the defendant's plea of abatement; overruled the motion to suppress the defendant's statements; found that the defendant knowingly and intelligently waived his rights; and that the statements of the defendant were freely and voluntarily made. The trial court determined that the State had proved the defendant's sanity beyond a reasonable doubt; found him guilty of murder in the first degree; and imposed a sentence of life imprisonment.

*State v. Russell,* 194 Neb. 64, 65–69, 230 N.W.2d 196, 199–201 (1975).

In this Court, on appeal, defendant raises two issues:

(a) That there was a violation of due process because of the County Attorney's unreviewable discretion, without applicable standards, to charge a minor defendant as an adult rather than as a juvenile offender; and,

(b) That the defendant's confessions should not have been admitted in the trial because they were involuntary and because the defendant did not knowingly and intelligently waive his rights to counsel and silence prior to confessing.

■ It will have been noted that the defendant was but 17 years of age. Herein lies his first claim of error. It is his assertion that since, under the law of Nebraska at the time of his trial, the County Attorney had "unbridled" discretion to proceed against him either as an adult or a juvenile offender,[2] he has been denied due process in that such decision was made upon the County Attorney's authority alone and without evidentiary hearing.[3]

2. *See State v. Grayer,* 191 Neb. 523, 215 N.W.2d 859 (1974); *DeBacker v. Sigler,* 185 Neb. 352, 175 N.W.2d 912 (1970), *appeal dismissed,* 403 U.S. 926, 91 S.Ct. 2258, 29 L.Ed.2d 706 (1971).

3. Subsequent to defendant's trial, Neb.Rev. Stat. § 43–202.01 to 202.02 (Supp.1974), *as amended,* (Supp.1975), became effective, setting out specific standards to be followed by the county attorney in reaching the decision as

With respect to the issue of prosecutorial discretion, we agree with the en banc holding of the Fourth Circuit in *Cox v. United States*, 473 F.2d 334 (4th Cir.), *cert. denied* 414 U.S. 869, 94 S.Ct. 183, 38 L.Ed.2d 116 (1973), and the holdings in *United States v. Bland*, 153 U.S.App.D.C. 254, 472 F.2d 1329 (1972), *cert. denied*, 412 U.S. 909, 93 S.Ct. 2294, 36 L.Ed.2d 975 (1973), and *United States v. Quinones*, 516 F.2d 1309 (1st Cir.), *cert. denied*, 423 U.S. 852, 96 S.Ct. 97, 46 L.Ed.2d 76 (1975) that

> Congress could legitimately vest in the Attorney General discretion to decide whether to proceed against a juvenile as an adult and that the exercise of such discretion does not require a due process hearing.[4]

The reasoning therefor was well expressed in *United States v. Bland, supra,* in the following terms:

> The District Court's finding in the case at bar, and appellee's assertion to the same effect—that the exercise of the discretion vested by Section 2301(3)(A) in the United States Attorney to charge a person 16 years of age or older with certain enumerated offenses, thereby initiating that person's prosecution as an adult, violates due process—ignores the long and widely accepted concept of prosecutorial discretion, which derives from the constitutional principle of separation of powers. The Fifth Circuit, in holding that a court had no power to compel a United States Attorney to sign an indictment, stated:
>
> > Although as a member of the bar, the attorney for the United States is an officer of the court, he is nevertheless an executive official of the Government, and it is as an officer of the executive department that he exercises a discretion as to whether or not there shall be prosecution in a particular case. It follows, as an incident of the constitutional separation of powers, that the courts are not to interfere with the free exercise of the discretionary powers of the attorneys of the United States in their control over criminal prosecutions. (Footnote omitted.)

472 F.2d at 1335. *See also Newman v. United States*, 124 U.S.App.D.C. 263, 382 F.2d 479, 480 (1967): "Few subjects are less adapted to judicial review than the exercise by the Executive of his discretion in deciding when and whether to institute criminal proceedings, or what precise charge shall be made, or whether to dismiss a proceeding once brought."

The defendant's reliance upon *Kent v. United States*, 383 U.S. 541, 86 S.Ct. 1045, 16 L.Ed.2d 84 (1966) is misplaced. *Kent* involved a decision of the Juvenile Court of the District of Columbia, waiving jurisdiction to the United States District Court for the District of Columbia. It is the holding of *Kent* that when the question is one of waiver of jurisdiction of a Juvenile Court, and it is to be decided by a judge of the Juvenile Court, the juvenile is entitled to a hearing on the question of waiver, and to the assistance of counsel in that hearing.[5] The decision is, of course, harmonious with our tradition that judicial proceedings involving substantial rights of an alleged criminal shall be attended by the full panoply of due process. But we do not here confront judicial proceedings. Rather, we have simply a traditional exercise of discretion within the executive branch, and while we recognize that the prosecutor's decision has a substantial impact on the course of

---

to whether a minor is to be charged as an adult or as a juvenile. The statute also permits a minor, charged as an adult, to challenge his prosecution by requesting the adult court to waive jurisdiction of his case to the juvenile court. The Nebraska court held, in *State v. Russell*, 194 Neb. 64, 73, 230 N.W.2d 196, 202–03 (1975), that the statute was procedural only and had no retroactive effect. The point was not argued to us.

**4.** *Quinones, supra,* 516 F.2d at 1311. It has not been urged to us that there is any substantial difference in principle between the exercise of prosecutorial discretion in a proper case by the Attorney General or by a county attorney, and none has occurred to us.

**5.** *See also Kemplen v. Maryland*, 428 F.2d 169 (4th Cir. 1970).

subsequent proceedings, we cannot equate the prosecutorial decision with judicial proceedings, absent legislative direction.[6]

As to the allegations that defendant's confessions were involuntary, gained by trickery, and without knowing and intelligent waiver of his rights to counsel and silence prior to his confessions, we have scrutinized the record with great care. There is no doubt that the defendant was young, of a low order of mentality, and had had a history of treatment for psychiatric disorders. Psychiatrists testified pro and con as to his mental capabilities and understanding, and there was much testimony as to the conditions under which his confessions were made. It was the holding of the Nebraska Supreme Court on these issues that the defendant's allegations were without substantial merit.[7]

The District Court, recognizing the Court's duty in habeas corpus cases, to examine the entire record and make an independent determination of the constitutional issue, found that "the confession was intelligent and voluntary and petitioner knowingly and voluntarily waived his right to counsel," that "[t]he confession was not obtained by lengthy interrogation or coercion," that "Petitioner was capable of understanding his constitutional rights," and that "the totality of circumstances supports the state court's conclusion that the confession was voluntary."[8]

We have carefully reviewed the record and are convinced that the findings of fact of the District Court, based upon substantial evidence, are not clearly erroneous and that no error of law has been shown. *Leasure v. Lockhart*, 509 F.2d 23, 25 (8th Cir.

---

**6.** We would not be understood as going beyond the issues and circumstances of this case in holding as we do. Should such factors as race, religion, or other arbitrary classifications be involved, more cogent reasons would be presented for the review of prosecutorial discretion than those here involved.

While there may be circumstances in which courts would be entitled to review the exercise of prosecutorial discretion, these circumstances would necessarily include the deliberate presence of such factors as "race, religion, or other arbitrary classification," not found in the case at bar. For example, in the absence of such factors, this court has held that the exercise of prosecutorial discretion, even when it results in different treatment of codefendants originally charged in the same case with the same offense, does not violate due process or equal protection of the law. (Footnotes omitted.)

*United States v. Bland, supra,* 472 F.2d at 1336. *Cf. Oyler v. Boles,* 368 U.S. 448, 456, 82 S.Ct. 501, 506, 7 L.Ed.2d 446 (1962):

Moreover, the conscious exercise of some selectivity in enforcement is not in itself a federal constitutional violation. Even though the statistics in this case might imply a policy of selective enforcement, it is not stated that the selection was deliberately based upon an unjustifiable standard such as race, religion or other arbitrary classification. Therefore grounds supporting a finding of a denial of equal protection were not alleged.

**7.** "The record here is undisputed that the in-custody interrogation of the defendant fully complied with the procedures laid down in Miranda. Under such circumstances appel-

late courts should be slow to mandate additional responsibilities. See *United States v. Poole,* 161 U.S.App.D.C. 289, 495 F.2d 115 (1974). The record of the interrogation, reinforced by the tapes, is devoid of any indication of coercion unless it can be said that custodial surroundings in themselves constitute coercion. * * * The time required for the interrogation was comparatively short and it was conducted in the early evening hours. The evidentiary use of a defendant's incriminating statement violates due process if it can be shown that the statement obtained is not the product of a rational intellect and a free will. The determination of those issues necessitates the consideration of the totality of the circumstances. *Davis v. North Carolina,* 384 U.S. 737, 86 S.Ct. 1761, 16 L.Ed.2d 895. In cases involving related or analogous circumstances courts have found that the totality of circumstances supported the conclusion that the statements made were voluntary. [Citing cases.] A confession or statement cannot be held invalid merely because the accused was 17 years of age nor merely because he had a history of intermittent mental illness. In the case before us the totality of the circumstances supports the conclusion of the trial court that the defendant's statement here was given voluntarily, knowingly, and intelligently, and was not constitutionally defective."

*Russell, supra,* 194 Neb. at 71–72, 230 N.W.2d at 201–02.

**8.** *Russell v. Parratt,* Civil No. 75–L–113, Memorandum Opinion at 4 (D.Neb., filed Jan. 16, 1976).

1975); *Brown v. Swenson*, 487 F.2d 1236, 1240 (8th Cir. 1973), *cert. denied*, 416 U.S. 944, 94 S.Ct. 1952, 40 L.Ed.2d 296 (1974); *Taylor v. Swenson*, 458 F.2d 593, 597 (8th Cir. 1972).

We affirm.