James J. STOKES, Petitioner, Appellee,

v.

Michael E. FAIR, Respondent, Appellant.

No. 78–1069.

United States Court of Appeals,
First Circuit.

Argued June 5, 1978.

Decided Aug. 10, 1978.

---

288

Barbara A. H. Smith, Asst. Atty. Gen., Chief, Crim. App. Section, Boston, Mass., with whom Francis X. Bellotti, Atty. Gen., and Stephen R. Delinsky, Asst. Atty. Gen., Chief, Crim. Bureau, Boston, Mass., were on brief, for respondent, appellant.

James F. McHugh, Boston, Mass., with whom Thomas H. Walsh, Jr., and Bingham, Dana & Gould, Boston, Mass., were on brief, for petitioner, appellee.

Before COFFIN, Chief Judge, CAMPBELL and BOWNES, Circuit Judges.

COFFIN, Chief Judge.

This action arises out of appellee's petition for a writ of habeas corpus. Appellee claims that his right to due process was violated when the municipal court for the Dorchester district failed to state the reasons for its decision to waive juvenile jurisdiction over him and to refer him for treatment as an adult.

The facts are undisputed. Juvenile delinquency complaints were issued in 1969 charging appellee, a 16 year old youth, and two adults, an older brother and a cousin, with breaking and entering and murder. A hearing was held before the municipal court at which appellee was represented by counsel. A witness testified before the court that appellee had displayed to him a sawed off shotgun, and had admitted breaking and entering into a local business at night, being discovered and chased by the watchman, and together with his accomplices attacking the watchman and "beat[ing] him to a pulp." It was strongly implied that the motive of the crime was to steal money and that it had been carried out. The court dismissed the juvenile complaints noting on the back of each that "the interest of the public requires that he shall be tried for the said offense." Adult criminal complaints

were issued against appellee the same day. He was eventually convicted of breaking and entering and first degree murder. His conviction was reduced on appeal to murder in the second degree, and he is currently serving a life sentence for his crimes.

The district court, basing its decision on *Kent v. United States,* 383 U.S. 541, 86 S.Ct. 1045, 16 L.Ed.2d 84 (1966), issued a thoughtful opinion, concluding that the writ should be granted and ordered appellee released unless Massachusetts provided him with a de novo hearing on the waiver of juvenile jurisdiction issue within 30 days. The Commonwealth appealed that decision and was granted a stay of the district court's order pending the result of this appeal. We reverse the district court's judgment and deny appellee's petition.

The Supreme Court's opinion in *Kent* has produced considerable controversy over which if any of the procedural protections extended to accused juveniles in that case are constitutionally required, and which of them were mandated because of the Court's interpretation of the District of Columbia's particular statutory scheme. *Compare United States ex rel. Turner v. Rundle,* 438 F.2d 839 (3d Cir. 1971) *with United States ex rel. Bombacino v. Bensinger,* 498 F.2d 875 (7th Cir. 1974). There is no clear-cut answer. The Court's opinion contains extensive references both to constitutional rights and to the local statute. While the statement that "[T]here is no place in our system of law for reaching a result of such tremendous consequences without ceremony—without hearing, without effective assistance of counsel, without a statement of reasons", *Kent, supra,* 382 U.S. 554, 86 S.Ct. at 1053, forcefully suggests a constitutional dimension to the case, we cannot ignore explicit language to the contrary. The Court equally forcefully stated, "This concern [that children in juvenile court are doubly deprived, receiving neither procedural protection nor special care], does not induce us in this case to accept the invitation to rule that constitutional guaranties which would be applicable to adults charged with the serious offenses for which Kent was tried must be applied in juvenile court proceedings concerned with allegations of law violation. The Juvenile Court Act and the decisions of the United States Court of Appeals for the District of Columbia Circuit provide an adequate basis for decision of this case, and we go no further." *Id.* at 556, 86 S.Ct. at 1054.

Given this ambiguity we cannot say that *Kent* promulgated a standard list of absolute procedural guarantees which must be provided before an accused juvenile can receive adult offender treatment. This seems obvious when it is remembered that there is no constitutional right to any preferred treatment as a juvenile offender and that the federal government treats the question of whether a defendant is to be charged as an adult criminal or a juvenile delinquent as one of prosecutorial discretion devoid of most due process guarantees. We have found no constitutional flaw in such a system. *See United States v. Quinones,* 516 F.2d 1309 (1st Cir. 1975); *Cox v. United States,* 473 F.2d 334 (4th Cir. 1973). However, when a state by statute entrusts this determination to the judiciary, more formal mechanisms to insure fundamental fairness are called into play and the statute must be interpreted "in the context of constitutional principles relating to due process and the assistance of counsel." *Kent, supra,* 383 U.S. at 557, 86 S.Ct. at 1055. This means that the procedural protections which must be afforded a juvenile before he may be transferred to adult offender status vary in terms of the particular statutory scheme which entitles him to juvenile status in the first place.*

For example, in jurisdictions in which the court's determination is controlled by substantive criteria requiring an evidentiary hearing, a full panoply of due process protections might well be necessary. On the other hand, should a state statute indicate that any juvenile charged with murder must be treated as an adult offender, many procedural safeguards would be superfluous and meaningless in that context. We note

---

* It is important to point out that there are no substantive constitutional requirements as to

the content of the statutory scheme a state may select. "[T]he Court has never attempted to

that we are unable to conceive of a statutory context in which some form of hearing and representation by counsel would not be required and there may well be other universally applicable guarantees. However, a right to a statement of reasons is not one of them. *See Broadway v. Beto,* 338 F.Supp. 827 (N.D.Tex.1971), *aff'd,* 459 F.2d 483 (5th Cir. 1972) (interpreting *Kent* to hold that the Constitution required a meaningful hearing and effective assistance of counsel while the District of Columbia statute mandated a statement of reasons for the waiver of juvenile status).

■ In this case, the relevant statute clearly gave the municipal court maximum discretion in waiving juvenile status. Mass. Gen.Laws ch. 119 § 61 provides that the juvenile may be treated as an adult "if the court is of the opinion that the interests of the public require that [the accused juvenile] should be tried for said offense or violation, instead of being dealt with as a delinquent child. . . . " No specific evidentiary determinations were required. State law did not require that a statement of reasons be given. *See Stokes v. Commonwealth,* 368 Mass. 754, 336 N.E.2d 735 (1975). There was a hearing, and a witness testified. Stokes was represented by counsel who cross-examined the witness.

The district court was influenced in reaching its decision by the fact that Stokes could appeal his transfer and that meaningful review on appeal would be facilitated by a statement of reasons by the lower court as to the reasons for its decision. The court cited *United States ex rel. Bombacino v. Bensinger, supra,* 498 F.2d at 875 to support its conclusion. In *Bombacino,* Judge (now Justice) Stevens observed that there is no inflexible requirement that a statement of reasons be given and that a statement is less necessary when the juvenile is represented by counsel. Moreover, he noted that this was not a situation where the rationale for the decision could effectively guide future behavior of the parties, and in Illinois, the state in which the proceeding took

prescribe criteria for, or the nature and quantum of evidence that must support, a decision to transfer a juvenile for trial in adult court."

place, there could be no appellate review of the transfer decision. The court concluded that no statement of reasons was required.

■ The only distinction between the present case and the circumstances outlined in *Bombacino* is that Massachusetts does provide a mechanism for appellate review of the waiver of juvenile status. While we readily agree that in most cases in which review is possible the preferred procedure would be for the court to state the reasons for its decision and in some cases such a statement of reasons may be essential to due process, we cannot say that appellee's constitutional rights were violated here. Appellee received a hearing at which he was represented by counsel. At that hearing the municipal court received evidence that Stokes, then a 16 year old, had been carrying a sawed-off shotgun, that he had broken into a local business with accomplices, that he took money from the premises, and that after being discovered by the watchman, Stokes and his accomplices had beaten him to death. The testimony also indicated that Stokes' accomplices were an older brother and a cousin. There was considerable discussion with a fourth person prior to the departure of the three for the break-in. The record thus is wholly consistent with a planned and deliberate operation.

The hearing was not a lengthy affair and the above evidence was all that was brought forward. It seems to us that the reasons for waiving appellee's juvenile status are completely and unmistakably apparent from this record and that there can be no question that, considering the record and the requirements of the waiver statute, the municipal court was clearly justified in ordering Stokes to be treated as an adult offender.

A useful inquiry to test this conclusion is to ask whether a judge, on this record, could be expected to say anything other than that "This was a deliberate breaking and entering, stealing money the motive, engaged in by this armed 16 year old and

*Breed v. Jones,* 421 U.S. 519, 537, 95 S.Ct. 1779, 1790, 44 L.Ed.2d 346 (1974).

two other older boys, resulting in their being accosted and not only resisting capture but administering such an excessive beating that death resulted. I find that the public interest requires that Stokes be tried along with his two associates." Such a formulation of reasons, under this statute, would readily pass muster. But in fact the record here is consistent only with such a formulation. Requiring the court to repeat the facts presented to it would have added little if anything to appellee's knowledge or a reviewing court's ability to evaluate the proceeding. In such circumstances, as in *Bombacino,* "the absence of a statement of reasons cannot be termed fundamentally unfair." *Id.* at 879.

*Reversed and remanded with directions that the district court dismiss the petition for habeas corpus.*