381 So.2d 1361 (1980)
STATE of Florida, Appellant,
v.
Mark Randall CAIN, Appellee.
Virgil Thomas DUNCAN, Appellant,
v.
STATE of Florida, Appellee.
Nos. 56528, 57410.
Supreme Court of Florida.
March 27, 1980.
*1362 Jim Smith, Atty. Gen., for State of Fla. in both cases.
Russell S. Bohn, Asst. Atty. Gen., West Palm Beach, for appellant in No. 56528.
Richard L. Jorandby, Public Defender, and Cherry Grant, Asst. Public Defender, West Palm Beach, for appellee in No. 56528.
Harry W. Carls, III, Public Defender, and Glenn M. Klausman, Asst. Public Defender, Orlando, for appellant in No. 57410.
Marc E. Kirk, Asst. Atty. Gen., West Palm Beach, for appellee in No. 57410.
SUNDBERG, Justice.
These consolidated cases present the issue of whether the state may constitutionally vest the state attorney with authority to criminally prosecute a juvenile who is sixteen years of age or older as an adult under subsection 39.04(2)(e)4, Florida Statutes (Supp. 1978), when the juvenile has in the past committed two delinquent acts one of which involved an offense classified under Florida law as a felony. Because the trial courts below passed on the constitutional validity of subsection 39.04(2)(e) 4, we have direct appellate jurisdiction under our constitution. Art. V, § 3(b)(1), Fla. Const.

STATE v. CAIN, No. 56,528
Mark R. Cain, a juvenile, was charged by amended information on February 6, 1979, with two counts of armed burglary of a dwelling and with two counts of grand theft. Cain filed a motion to dismiss the information on the ground that the state charged him as an adult pursuant to an unconstitutional statute, subsection 39.04(2) (e)4, Florida Statutes (Supp. 1978), which provides:
(e) The state attorney shall in all such cases, after receiving and considering the recommendation of the intake officer, have the right to take action, regardless of the action or lack of action of the intake officer, and shall determine the action which is in the best interest of the public. The state attorney may:
.....
4. With respect to any child who at the time of commission of the alleged offense was 16 or 17 years of age, file an information when in his judgment and discretion the public interest requires that adult sanctions be considered or imposed. Upon motion of the child, the case shall be transferred for adjudicatory proceedings as a child pursuant to s. 39.09(1) if it is shown by the child that he had not previously been found to have committed two delinquent acts, one of which involved an offense classified under Florida law as a felony[.]
Cain asserted that the statute unconstitutionally delegates to the state attorney the unbridled discretion to prosecute a juvenile as an adult. Cain also maintained that the statute violates due process of law by permitting transfer of the juvenile to adult court jurisdiction without a hearing. The circuit court held the statute unconstitutional and granted Cain's motion to dismiss, resulting in the state's filing this appeal.

DUNCAN v. STATE, No. 57,410
On March 27, 1979, the county sheriff filed a complaint in the juvenile division of the circuit court charging Virgil T. Duncan with petit theft. On April 25, the state attorney filed an information in the county *1363 court charging Duncan with the same crime. On Duncan's motion, the county court ordered the transfer of the case to the juvenile division of the circuit court. The state in turn moved to transfer the case back to the county court, alleging that the county court had criminal jurisdiction under subsection 39.04(2)(e)4, Florida Statutes (Supp. 1978), as a result of the filing of an information charging a misdemeanor. The circuit court granted the state's motion and on June 1, 1979, transferred the case to the county court. Duncan then filed a motion to dismiss alleging, among other things, that the statute was an unconstitutional abrogation of procedural due process, a denial of equal protection and an unconstitutional delegation of unbridled discretion to the state attorney to prosecute a juvenile as an adult. The county court denied Duncan's motion to dismiss and held subsection 39.04(2)(e)4 constitutional. Duncan then pleaded nolo contendere and the county court adjudicated him guilty, with sentencing being withheld pending this appeal.
At the outset it should be remembered that the juvenile court system is a fairly recent phenomenon, beginning in this country at the end of the last century and since spreading to every state. There was no common law right to be specially treated as a juvenile delinquent instead of a criminal offender. In re Gault, 387 U.S. 1, 16, 87 S.Ct. 1428, 1437, 18 L.Ed.2d 527 (1967). Nor is there any inherent or constitutional right to preferred treatment as a juvenile delinquent. Stokes v. Fair, 581 F.2d 287, 289 (1st Cir.1978); Woodward v. Wainwright, 556 F.2d 781, 785 (5th Cir.1977). Under our Florida Constitution, when authorized by law, a "child" as therein defined may be charged with a violation of law as an act of delinquency instead of a crime. Art. I, § 15(b), Fla. Const. Therefore, a child has the right to be treated as a juvenile delinquent only to the extent provided by our legislature. Johnson v. State, 314 So.2d 573 (Fla. 1975). With respect to juveniles, the legislature has acted in chapter 39 of the Florida Statutes to temper the traditional prosecutorial prerogative of deciding what criminal offense to bring against whom. Under subsection 39.02(1), Florida Statutes (Supp. 1978), the juvenile division of the circuit court is vested with exclusive original jurisdiction over proceedings in which a "child" is alleged to have committed a delinquent act or violation of law other than a traffic offense.[1] The legislature has, however, provided for several exceptions to the juvenile court's otherwise exclusive jurisdiction over juveniles. First, the court may waive juvenile jurisdiction over any child fourteen years of age or older after a waiver hearing in which the criteria listed in section 39.09(2)(c)1-8, Florida Statutes (Supp. 1978), are considered. §§ 39.02(5)(a) & 39.01(35), Fla. Stat. (Supp. 1978). If the juvenile has been previously adjudicated delinquent for certain serious violent offenses and is currently charged with a second or subsequent such offense, the state attorney is required to move for a transfer of the child for criminal prosecution. § 39.09(2)(a), Fla. Stat. (Supp. 1978). Next, a juvenile may be prosecuted as an adult upon the return of a grand jury indictment charging him with a crime punishable by death or life imprisonment. § 39.02(5)(c), Fla. Stat. (Supp. 1978). Third, in the exception disputed here, the state attorney may, by filing an information, criminally prosecute a juvenile sixteen years of age or older when in his discretion the public interest requires that adult sanctions be imposed. § 39.04(2)(e)4, Fla. Stat. (Supp. 1978). If the child has not previously been found to have committed two delinquent acts, one of which involved an offense classified as a felony under Florida law, the child may move for transfer of the case for adjudication *1364 as a juvenile. Id. Finally, a juvenile has a right to be tried as an adult upon written demand joined by a parent or guardian. § 39.02(5)(b), Fla. Stat. (Supp. 1978); art. I, § 15(b), Fla. Const.
It cannot be said that the legislature acted arbitrarily in providing for these statutory exceptions to juvenile treatment. The legislature could reasonably conclude based on circumstances such as age, seriousness of the offense and past record that certain juvenile offenders were not suitable candidates for the juvenile act's rehabilitative goals; consequently, the legislature could reasonably classify these offenders as persons against whom adult sanctions would be an alternative. The logical progression of the statutory transfer scheme demonstrates that, far from being arbitrary, the transfer scheme is entirely reasonable. For the most serious felonies (capital and life) charged against a juvenile of any age, transfer is automatic by indictment. § 39.02(5)(c). For a repeating offender sixteen or seventeen years of age with two or more prior delinquent acts, one of which would constitute a felony, transfer is within the prosecutor's discretion by filing an information. § 39.04(2)(e)4. For any offense by a juvenile age fourteen or over, transfer is by motion and only after a hearing before the judge. §§ 39.02(5)(a) & 39.09(2). Thus, as the circumstances supporting transfer become less compelling, the procedures required become more formal. With this background in mind we now turn to the specific arguments of defendants Cain and Duncan.
The myriad due process arguments asserted by Cain and Duncan in their attack on section 39.04(2)(e)4 closely resemble those raised and rejected in Johnson v. State, 314 So.2d 573 (Fla. 1975), and Woodward v. Wainwright, 556 F.2d 781 (5th Cir.1977). These cases upheld the constitutionality of subsection 39.02(5)(c) of the Florida Statutes permitting the criminal prosecution of a juvenile of any age upon the return of a grand jury indictment charging an offense punishable by death or life imprisonment. In Johnson the defendant argued that the statutory provision was defective because it sets no guidelines to assist the state attorney or grand jury in determining which child should be indicted and which should be dealt with as a delinquent. This Court responded to that argument as follows:
In both the adult and juvenile divisions of our court system, the State Attorney is the prosecuting officer. In any particular case he may elect to prosecute or not. The prosecutorial discretion to which the appellant objects is no more than that which is inherent in our system of criminal justice. Its origin is found in the common law of England. Similarly in the Federal system the Federal Courts have consistently held that the discretion of the Attorney General in choosing whether to prosecute or not to prosecute, or to abandon a prosecution already started, is absolute.
314 So.2d 577 (footnotes omitted). We do not see how a state attorney's decision to seek an indictment against a juvenile, as permitted under subsection 39.04(2)(e)5, is distinguishable from a state attorney's decision to file an information against a juvenile. In either case the legislature has, by these statutory exceptions to the juvenile division's general jurisdiction over children, returned to the state attorney his traditional prerogative of deciding who to criminally charge with what offense. Cain and Duncan attempt to distinguish Johnson and Woodward on the basis that the statutory provision there controlled the state attorney's charging authority by the requirements of a grand jury indictment and an offense punishable by death or life imprisonment. We do not find these distinctions persuasive. Under subsection 39.04(2)(e)4, a state attorney in filing an information is likewise restricted in that he may successfully charge only a sixteen or seventeen-year-old and then only if the child has also been previously found to have committed two delinquent acts, one of which would *1365 constitute a felony if committed by an adult. Moreover, the requirement of a grand jury indictment only ensures that there is probable cause for the charge  it does not determine the propriety of prosecuting a juvenile as an adult.
Cain and Duncan concede that the legislature might have been less charitable than it was in subsection 39.04(2)(e)4 by eliminating juvenile treatment altogether for those sixteen years of age or older. But, they argue, having provided for special treatment, the legislature may not now give it to some juveniles while taking it away from others without a hearing and other due process guarantees. It is contended that because the decision whether to waive juvenile jurisdiction is "critically important" the due process requirements set forth in Kent v. United States, 383 U.S. 541, 86 S.Ct. 1045, 16 L.Ed.2d 84 (1966), for waiver of juvenile court jurisdiction should apply whether the waiver decision is vested in a judge or a state attorney. Cain and Duncan also support their theory by citing to a number of United States Supreme Court cases which in general stand for the proposition that procedural due process must be accorded whenever a person faces substantial loss as a result of governmental action, notwithstanding any purported distinction between a "right" and a "privilege."[2]
In Kent the Court considered a District of Columbia statute which permitted the juvenile judge, "after full investigation," to waive jurisdiction over any juvenile sixteen years of age or over who was charged with a felony. The Court stated that the question of whether a juvenile will be deprived of the special treatment afforded under the juvenile court act was "critically important," noting in particular that in that case it meant the difference between a possible death sentence and a maximum of five years detention as a juvenile. The Court then held that as a condition to a valid waiver order, the juvenile was entitled to a hearing, effective assistance of counsel and a statement of reasons. In reaching its holding the Court said, "We believe that this result is required by the statute read in the context of constitutional principles relating to due process and the assistance of counsel." Id. at 557, 86 S.Ct. at 1055. This ambiguous statement has occasioned considerable debate as to whether the constitutional ramifications of the holding in Kent extend beyond the District of Columbia statute involved in that case. See, e.g., Stokes v. Fair, 581 F.2d 287, 289 (1st Cir.1978), and the cases cited therein; Woodward v. Wainwright, 556 F.2d 781, 784 (5th Cir.1977), and the cases cited therein. Whatever its constitutional ramifications,[3] we do not believe they extend to the statutory provision under consideration here where discretion to prosecute a juvenile as an adult is vested in the prosecutor rather than in a judge. Accord, Stokes v. Fair, 581 F.2d 287 (1st Cir.1978); Woodward v. Wainwright, 556 F.2d 781 (5th Cir.1977); Russell v. Parratt, 543 F.2d 1214 (8th Cir.1976); United States v. Quinones, 516 F.2d 1309 (1st Cir.), cert. denied, 423 U.S. 852, 96 S.Ct. 97, 46 L.Ed.2d 76 (1975); Cox v. United States, 473 F.2d 334 (4th Cir.), cert. denied, 414 U.S. 869, 94 S.Ct. 183, 38 L.Ed.2d 116 (1973); United States v. Bland, 153 U.S.App.D.C. 254, 472 F.2d 1329 (1972), *1366 cert. denied, 412 U.S. 909, 93 S.Ct. 2294, 36 L.Ed.2d 975 (1973). See also the state court decisions cited in Woodward v. Wainwright, 556 F.2d at 784 n. 13. There is also direct support for this view in the subsequent Supreme Court decisions themselves which have referred to Kent. In the landmark decision, In re Gault, 387 U.S. 1, 12, 87 S.Ct. 1428, 1436, 18 L.Ed.2d 527 (1967), the Court said with respect to Kent, "Although our decision turned upon the language of the statute, we emphasized the necessity that `the basic requirements of due process and fairness' be satisfied in such [waiver] proceedings." (Emphasis added.) Later, in Breed v. Jones, 421 U.S. 519, 537, 95 S.Ct. 1779, 1790, 44 L.Ed.2d 346 (1973), the Court said that in Kent it "held that hearings under the statute there involved `must measure up to the essentials of due process and fair treatment.'" (Emphasis added.) The "proceedings" or "hearings" involved in Kent were, of course, judicial proceedings or hearings, not the processes of prosecutorial decision-making. The analysis of the court in Russell v. Parratt, 543 F.2d 1214, 1216-17 (8th Cir.1976), applies with equal force here:
The defendant's reliance upon Kent v. United States, 383 U.S. 541, 86 S.Ct. 1045, 16 L.Ed.2d 84 (1966) is misplaced. Kent involved a decision of the Juvenile Court of the District of Columbia, waiving jurisdiction to the United States District Court for the District of Columbia. It is the holding of Kent that when the question is one of waiver of jurisdiction of a Juvenile Court, and it is to be decided by a judge of the Juvenile Court, the juvenile is entitled to a hearing on the question of waiver, and to the assistance of counsel in that hearing. The decision is, of course, harmonious with our tradition that judicial proceedings involving substantial rights of an alleged criminal shall be attended by the full panoply of due process. But we do not here confront judicial proceedings. Rather, we have simply a traditional exercise of discretion within the executive branch, and while we recognize that the prosecutor's decision has a substantial impact on the course of subsequent proceedings, we cannot equate the prosecutorial decision with judicial proceedings, absent legislative direction.
(Footnotes omitted.)
It is also clear that the state attorney's decision to bring criminal charges against a juvenile does not involve an "adjudication." Rather, it is only the basis by which adjudication is initiated. Thus the cases cited by Cain and Duncan in note 2, supra, where the government acted to deprive the individuals involved of certain rights and statutory benefits without due process, are inapposite. Accord, United States v. Bland, 153 U.S.App.D.C. 254, 472 F.2d 1329 (1972), cert. denied, 412 U.S. 909, 93 S.Ct. 2294, 36 L.Ed.2d 975 (1973). The juvenile who is charged with a criminal offense is afforded the same procedural and substantive rights as is any other person. Moreover, we disagree with defendants' threshold analysis that something is being "taken" from them as a result of their being prosecuted as adults rather than as juveniles. As we stated earlier in this opinion, juveniles are given such immunity from criminal prosecution as is conferred on them under statute. Reading chapter 39 in pari materia, we note that while exclusive jurisdiction over juveniles is initially vested in the juvenile division of the circuit court, this jurisdiction is expressly qualified to the extent of the statutory exceptions discussed above. Thus the statutory scheme of chapter 39 dispels any notion that a juvenile is guaranteed an absolute right to juvenile treatment. Accord, Woodward v. Wainwright, 556 F.2d 781 (5th Cir.1977).
Cain and Duncan also contend that subsection 39.04(2)(e)4 violates due process because of an implied conclusive statutory presumption[4] that the juveniles charged as adults are unfit for rehabilitation. This *1367 contention simply isn't so. First of all, the state attorney is not bound under the section to prosecute a juvenile as an adult. He is free to exercise his discretion on an ad hoc basis. Second, even when a juvenile is convicted in adult court he is still given special treatment as a juvenile. Before imposing judgment, the trial court must conduct a disposition hearing to determine whether juvenile or adult sanctions are appropriate. § 39.02(6), Fla. Stat. (Supp. 1978). The court must follow the procedure provided in subsection 39.111(6), Florida Statutes (Supp. 1978), and must consider the criteria enumerated in subsection 39.111(6)(c) 1-6 which in substantial part mirror the criteria the court is to consider in waiving juvenile jurisdiction in the first place. See § 39.09(2)(c)1-8 Fla. Stat. (Supp. 1978). Since the juvenile is extended many of the same advantages he would have derived from initial treatment as a juvenile delinquent, the filing of an information under subsection 39.04(2)(3)4 does not constitute an abandonment of rehabilitative efforts. Unlike in the statutory scheme faced by the juvenile defendant in Kent, here the waiver decision does not automatically expose the juvenile to such disparate maximum dispositions as the death sentence versus five years detention as a juvenile. Furthermore, even if adult sanctions are imposed against a juvenile, he may still enjoy the benefit of the youthful offender act under chapter 958 of the Florida Statutes.
Finally, Cain and Duncan argue that subsection 39.04(2)(3)4 violates due process of law on a separation of powers ground[5] by analogizing the situation here with that of the delegation of authority to an administrative agency. They cite the principle that the delegation of power by the legislature must be limited in scope so that nothing is left to an agency official's unbridled discretion in enforcing the law.[6] The defendants further point out that the "public interest" guideline contained in subsection 39.04(2)(3)4 has been rejected in the administrative agency context as being far too broad a standard to be meaningful.[7] The analogy is not well taken. It is well established that the legislature may, within clearly defined limits, delegate to an administrative agency the authority to provide rules and regulations for the complete operation and enforcement of the law within its express purpose, but may not delegate the power to enact a law or to declare what the law shall be or to exercise an unrestricted discretion in applying the law. E.g., Husband v. Cassel, 130 So.2d 69 (Fla. 1961). Here, however, we are dealing with the long-standing responsibility vested in a prosecutor, as a member of the executive branch, to enforce the criminal laws of the state. As we stated in Johnson v. State, supra, the discretion of a prosecutor in deciding whether and how to prosecute is absolute in our system of criminal justice.[8] That subsection 39.04(2)(4)4 calls for the *1368 state attorney to exercise his discretion in the "public interest" merely states a truism, for that obligation is already ascribed to him. But, defendants counter, the traditional role of the prosecutor is to determine the crime to be charged, not the status in which a person is treated. This last point overlooks the statutory provision upheld in our decision in Johnson v. State. The state attorney in seeking an indictment is, if successful, necessarily determining the status in which a juvenile will be treated as well as the offense with which he will be charged.
For the foregoing reasons we hold that subsection 39.04(2)(e)4, Florida Statutes (Supp. 1978), comports with due process and equal protection under the federal and state constitutions and does not constitute an unlawful delegation of authority under article II, section 3 of the Florida Constitution. Accordingly, the decision of the trial court in State v. Cain, 381 So.2d 1361, is reversed and the decision of the trial court in Duncan v. State, 381 So.2d 1361, is affirmed. Both cases are remanded to their respective trial courts for proceedings not inconsistent with our decision.
It is so ordered.
ENGLAND, C.J., and ADKINS, BOYD, OVERTON, ALDERMAN and McDONALD, JJ., concur.
NOTES
[1] A "child" is defined in subsection 39.01(7), Florida Statutes (Supp. 1978), as follows:

"Child" means any unmarried person under the age of 18 alleged to be dependent or any married or unmarried person who is charged with a violation of law occurring prior to the time that person reached the age of 18 years.
[2] See Goss v. Lopez, 419 U.S. 565, 95 S.Ct. 729, 42 L.Ed.2d 725 (1975); Wolff v. McDonnell, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974); Morrissey v. Brewer, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972); Goldberg v. Kelly, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970); Willner v. Commission on Character & Fitness, 373 U.S. 96, 83 S.Ct. 1175, 10 L.Ed.2d 224 (1963); Speiser v. Randall, 357 U.S. 513, 78 S.Ct. 1332, 2 L.Ed.2d 1460 (1958); Joint Anti-Fascist Refugee Comm. v. McGrath, 341 U.S. 123, 71 S.Ct. 624, 95 L.Ed. 817 (1951).
[3] Justice Harlan in his concurring and dissenting opinion in In re Gault, 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967), asserted that Kent "did not purport to rest on constitutional grounds." Id. at 66 n. 1, 87 S.Ct. at 1464 n. 1. Accord, State v. Steinhauer, 216 So.2d 214, 217 (Fla. 1968), cert. denied 398 U.S. 914, 90 S.Ct. 1698, 26 L.Ed.2d 79 (1970). However, we went on to say in Steinhauer that In re Gault crystalized the statutory implication of Kent into constitutional standards "with reference to waiver hearings." Id. at 218.
[4] See Stanley v. Illinois, 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972).
[5] See also art. II, § 3, Fla. Const. "The powers of the state government shall be divided into legislative, executive and judicial branches. No person belonging to one branch shall exercise any powers appertaining to either of the other branches unless expressly provided herein."
[6] See Harrington & Co. v. Tampa Port Authority, 358 So.2d 168 (Fla. 1978); Dickinson v. State, 227 So.2d 36 (Fla. 1969); Smith v. Portante, 212 So.2d 298 (Fla. 1968); City of Auburndale v. Adams Packing Ass'n, 171 So.2d 161 (Fla. 1965); Delta Truck Brokers, Inc. v. King, 142 So.2d 273 (Fla. 1963); Husband v. Cassel, 130 So.2d 69 (Fla. 1961).
[7] See Dickinson v. State and Delta Truck Brokers, Inc., supra, note 6. Because the standard is so broad, Cain and Duncan also assert, judicial review for abuse of discretion is precluded.
[8] Indeed, there is considerable authority for the proposition that prosecutorial discretion is itself an incident of the constitutional separation of powers, and that as a result the courts are not to interfere with the free exercise of the discretionary powers of the prosecutor in his control over criminal prosecutions. See Woodward v. Wainwright, 556 F.2d 781 (5th Cir.1977); Russell v. Parratt, 543 F.2d 1214 (8th Cir.1976); United States v. Bland, 153 U.S. App.D.C. 254, 472 F.2d 1329 (1972), cert. denied, 412 U.S. 909, 93 S.Ct. 2294, 36 L.Ed.2d 975 (1973); United States v. Cox, 342 F.2d 167 (5th Cir.), cert. denied sub nom. Cox v. Hauberg, 381 U.S. 935, 85 S.Ct. 1767, 14 L.Ed.2d 700 (1965).