104 Cal.Rptr.2d 140 (2001)
86 Cal.App.4th 1198
Morgan Victor MANDULEY et al., Petitioners,
v.
The SUPERIOR COURT of San Diego County, Respondent; The People, Real Party in Interest. Michael Rose et al., Petitioners,
v.
The Superior Court of San Diego County, Respondent; The People, Real Party in Interest.
Nos. D036356, D036456.
Court of Appeal, Fourth District, Division One.
February 7, 2001.
Review Granted April 25, 2001.
*141 William J. LaFond, Kerry L. Steigerwalt and Charles M. Sevilla, San Diego, for Petitioner Morgan Victor Manduley.
Haus & Damiani and Lisa J. Damiani, for Petitioner Steven James DeBoer.
Patrick Q. Hall, San Diego, for Petitioner Kevin Scott Williams.
Timothy A. Chandler, Alternate Public Defender, and Jose H. Varela, Deputy Alternate Public Defender, for Petitioner Adam Mitchell Ketsdever.
Michael D. McGlinn, for Petitioner Jason Wayne Beever.
Steven J. Carroll, Public Defender, Gary Nichols, Stewart Dadmun and Jo Pastore, Deputy Public Defenders, for Petitioner Michael Anthony Rose.
Marc B. Geller, San Diego, for Petitioner Nicholas Paul Fileccia.
Bardsley & Carlos, Francis J. Bardsley, San Diego, and Judith A. Litzenberger, for Petitioner Bradley Hunter Davidofsky.
Jordan Budd for American Civil Liberties Union of San Diego and Imperial Counties as Amicus Curiae on behalf of Petitioners.
Howard, Rice, Nemerovski, Canady, Falk & Rabkin, Palo Alto, Steven L. Mayer, San Francisco, Kimberly Proctor; Robert Kim and Margaret C. Crosby for American Civil Liberties Union of Northern California, Inc. as Amicus Curiae on behalf of Petitioners.
Mark D. Rosenbaum, Los Angeles, for ACLU Foundation of Southern California as Amicus Curiae on behalf of Petitioners.
John T. Philipsborn, San Francisco, for California Attorneys for Criminal Justice as Amicus Curiae in support of Petitioners.
No appearance for Respondent.
Paul j. Pfingst, District Attorney, Thomas F. McArdle, Hector M. Jiminez and Anthony Lovett, Deputy District Attorneys, for Real Party in Interest.
Bill Lockyer, Attorney General, David P. Druliner, Chief Assistant Attorney General, Gary W. Schons, Senior Assistant Attorney General, Raquel M. Gonzalez and Patti W. Ranger, Deputy Attorneys General, for County as Amicus Curiae on behalf of Real Party in Interest.
McDONALD, J.
At the March 7, 2000, California general election the voters approved Proposition 21, the Gang Violence and Juvenile Crime Prevention Initiative (Proposition 21). Section 26 of Proposition 21, which became effective the day after the election, amended Welfare and Institutions Code section *142 707.[1] The amendment replaced the former section 707, subdivision (d) in its entirety with a new provision that permits the prosecuting authority, in its discretion, to file certain criminal accusations against juveniles in either the adult criminal court or the juvenile court. As a result, Proposition 21 permits the prosecuting authority to determine in its discretion not only whether a crime should be charged, what crime should be charged and who should be charged, but also which of two legislatively authorized sentencing schemes the court may use to impose sentence if the charges are found true. We conclude that by placing within the discretion of the prosecuting authority the determination of which of two legislatively authorized sentencing schemes is available to the courts, Proposition 21's amendment to section 707, subdivision (d) violates the constitutional principle of the separation of powers between the executive and judicial branches of government.
Briefly summarized, section 707, subdivision (d), as amended by Proposition 21 (hereafter section 707(d)), provides that if a juvenile is 16 years old or older at the time he or she is alleged to have committed a specified qualifying offense identified by section 707(d), or is 14 years old or older at the time he or she is alleged to have committed a specified qualifying offense identified by section 707(d), the district attorney is given discretion to either (1) file a petition against the juvenile in juvenile court or (2) prosecute the juvenile as an adult in criminal court. If the district attorney elects to file a petition in juvenile court, the court must on motion conduct a fitness hearing to determine whether the juvenile, if found guilty of the charge, is subject to adult or juvenile penalties. However, if the district attorney elects to prosecute the juvenile as an adult in criminal court and the juvenile is found guilty, the court does not have the option to prescribe a juvenile court disposition; instead, the court must sentence the juvenile as an adult to adult penalties. (Pen. Code, § 1170.17, subd. (a).)
In this case, the San Diego District Attorney filed accusatory pleadings in adult court under section 707(d) against juveniles Rose, Manduley and others (collectively Petitioners). Petitioners challenged the constitutionality of section 707(d) below by demurring to the accusatory pleading (Pen.Code, § 1004), a proper vehicle for asserting the criminal statute under which they were prosecuted is unconstitutional. (Velasco v. Municipal Court (1983) 147 Cal.App.3d 340, 195 Cal.Rptr. 108.) The trial court overruled the demurrers and Petitioners filed with this court petitions for writs of mandate seeking review of the trial court's orders. Petitioners Rose and Manduley have each joined in the petition for extraordinary writ filed by the other, and petitioners DeBoer, Williams, Fileccia, Ketsdever, Beever and Davidofsky have joined in the petitions filed by Rose and Manduley. All petitions have been consolidated for oral argument and decision. Petitioners argue section 707(d) is unconstitutional because it violates the separation of powers provision of the California Constitution. In addition, they argued below and reassert in this writ proceeding that section 707(d) is invalid because it deprives them of due process, equal protection and the uniform operation of laws, and because Proposition 21 violates the single subject rule. We conclude that section 707(d) is unconstitutional under the separation of powers doctrine, and it is therefore unnecessary to examine in detail Petitioners' other constitutional arguments.
Although Petitioners acknowledge the Legislature is constitutionally entitled to define crimes and to prescribe the punishments for crimes, they argue that when the Legislature has prescribed that sententing *143 alternatives be available on conviction it is the judiciary's role to select from the legislatively-prescribed menu of sentences the disposition appropriate for the individual. Petitioners contend that section 707(d) violates this principle because it gives the executive branch the unchecked authority to prescribe which legislatively-authorized dispositional scheme will be available to the court if the charges are found true.

I

BACKGROUND

A. Separation of Powers Principles

Both the California and United States constitutions follow the principle of separation of powers among the legislative, executive and judicial branches of government. This principle precludes one branch from exercising, or interfering with the exercise of, the functions or powers of either of the other branches. (Cal. Const., art. III, § 3 [explicit declaration]; Springer v. Government of the Philippine Islands (1928) 277 U.S. 189, 48 S.Ct. 480, 482, 72 L.Ed. 845 [separation of powers implicit in United States Constitution].) Although we address here the provisions of a statute enacted through the initiative process, the separation of powers principles are applicable and essentially treat a voter-enacted statute as an act of the Legislature. (See, generally, People v. Superior Court (Romero) (1996) 13 Cal.4th 497, 53 Cal.Rptr.2d 789, 917 P.2d 628 [applying separation of powers analysis to statute enacted by initiative]; cf. Bagley v. City of Manhattan Beach (1976) 18 Cal.3d 22, 26, 132 Cal.Rptr. 668, 553 P.2d 1140 [electorates power to enact law through initiative subject to same limitations applicable to legislative body].)
The separation of powers doctrine allocates discrete functions to each of the three branches of government. In the arena of criminal law, the power to define crimes and fix penalties is vested solely in the legislative branch, subject to applicable constitutional prohibitions. (Keeler v. Superior Court (1970) 2 Cal.3d 619, 629, 87 Cal.Rptr. 481, 470 P.2d 617.) The power to determine whether to bring charges, against whom to bring charges, and what charges to bring among those potentially available is vested in the prosecuting authority as a member of the executive branch. Separation of powers principles prohibit the judiciary from supervising or interfering with that prosecutorial discretion (People v. Birks (1998) 19 Cal.4th 108, 134-135, 77 Cal.Rptr.2d 848, 960 P.2d 1073) even though a decision to charge one offense rather than another may on conviction require the court to impose a harsher sentence. (United States v. Batchelder (1979) 442 U.S. 114, 122-125, 99 S.Ct. 2198, 60 L.Ed.2d 755.) After the charging decisions have been made and the proceedings instituted, the process leading to conviction or acquittal and the choice of the sentence or other disposition is a judicial function (People v. Tenorio (1970) 3 Cal.3d 89, 94, 89 Cal.Rptr. 249, 473 P.2d 993), and the court's authority to select from the legislatively-prescribed sentencing options cannot be controlled by the prosecution. (People v. Superior Court (Romero), supra, 13 Cal.4th at p. 516, 53 Cal.Rptr.2d 789, 917 P.2d 628.) Although the Legislature (or the electorate by way of initiative) may restrict the sentencing options available to the court (ibid.), the courts have repeatedly held that after the Legislature has prescribed the dispositions available to the court, separation of powers principles preclude the Legislature from giving to the prosecutor the power to control the court's selection of the disposition. (See People v. Tenorio, supra, 3 Cal.3d at pp. 94-95, 89 Cal.Rptr. 249, 473 P.2d 993 [legislatively granted power of court to strike allegation for sentencing purposes cannot, be conditioned on consent of prosecutor]; People v. Navarro (1972) 7 Cal.3d 248, 258-260, 102 Cal.Rptr. 137, 497 P.2d 481 [although Legislature not required to give court power to commit narcotic addicts to a treatment program "having conferred this power it *144 cannot condition its exercise upon the approval of the district attorney"]; People v. Clay (1971) 18 Cal.App.3d 964, 967-970, 96 Cal.Rptr. 213 [exercise of legislatively conferred power to grant probation cannot be statutorily conditioned on consent of prosecution]; cf. Esteybar v. Municipal Court (1971) 5 Cal.3d 119, 124-128, 95 Cal.Rptr. 524, 485 P.2d 1140 [although the Legislature is not required to give power to a magistrate to reduce a wobbler offense from a felony to a misdemeanor, if it does so the Legislature cannot condition the court's power to make that decision on the approval of the district attorney].)

B. The Juvenile Court System

At common law, persons 14 years and older were deemed to have criminal capacity and their crimes were prosecuted in adult court. In the early part of the twentieth century state legislatures began creating juvenile court systems in which children under a certain age who committed offenses that would be crimes if committed by adults were instead adjudicated as juvenile delinquents. (In re Gault (1967) 387 U.S. 1, 14-17, 87 S.Ct. 1428, 18 L.Ed.2d 527; LaFave & Scott, Substantive Criminal Law (1986) § 4.11, pp. 566-569.) The Juvenile Court Law enacted in California in 1937, which has undergone numerous subsequent revisions, is designed to avoid ordinary criminal trials and punishments for juveniles charged with criminal conduct in favor of a system of informal hearings and treatment designed to rehabilitate and reform the juvenile offender. (10 Witkin, Summary of Cal. Law (9th ed. 1989) Parent and Child, § 449 et seq., p. 493 et seq.)
The legislative history of California's juvenile court scheme during the 1970's shows a steady lowering of the age, from 21 to 18 and then to 16 years of age, at which a juvenile could be tried as an adult, depending on the crime committed and the juvenile's fitness or unfitness for the rehabilitative nature of the juvenile court system. (Hicks v. Superior Court (1995) 36 Cal.App.4th 1649, 1659, 43 Cal.Rptr.2d 269.) By 1995, the statutory scheme had been modified to permit some 14 and 15 year old juveniles, if accused of specific serious crimes and found unfit by the court for a juvenile court disposition, to be tried and sentenced as adults in adult court. (Id. at pp. 1654-1657, 43 Cal.Rptr.2d 269.)

C. The Pre-Proposition 21 System

Under the juvenile court system as it existed before the current version of section 707(d) was added by the adoption of Proposition 21, the decision of whether a juvenile would be exposed to adult penalties rather than the comparatively benevolent dispositions available under the juvenile court laws began with an assessment of the age of the offender and the charged offense. With limited exceptions, when a juvenile, even if 16 years of age or older, was alleged to have committed a crime, the prosecution was required to commence the action in the juvenile court.[2] (§ 707, subd. (a).) However, for many crimes, the juvenile court could, on motion by the prosecution to place the juvenile into the adult system, hold a fitness hearing to determine whether to transfer the juvenile from juvenile to adult court. At the fitness hearing, statutorily-specified presumptions operated to place the burden of proof either on the prosecution to show unfitness to remain in juvenile court or on the juvenile to show fitness to remain in the juvenile *145 court system.[3] (Hicks v. Superior Court, supra, 36 Cal.App.4th at pp. 1654-1657, 43 Cal.Rptr.2d 269.) The court would hold a hearing, consider evidence and argument, and weigh statutorily specified factors[4] to guide its determination of whether the juvenile was fit for a juvenile court disposition or was unfit for a juvenile court disposition and should be subject to adult prosecution and penalties.
Beginning in 1995, some juveniles who were 14 or 15 years old at the time of the alleged commission of the crime could be tried as adults under the circumstances provided by former section 707, subdivisions (d) and (e), in effect before passage of Proposition 21. For these juveniles, the prosecution was required to file its petition in the juvenile court even for the most serious of crimes. However, if the offense allegedly committed was one of the qualifying offenses listed in former section 707, subdivision (d)(2), the prosecution could seek a court order transferring the action from juvenile to criminal court; the court could order the transfer if, considering five statutory criteria, it found the juvenile was not amenable to a juvenile court disposition. (Former § 707, subd. (d)(1); Hicks v. Superior Court, supra, 36 Cal.App.4th at pp. 1655-1656, 43 Cal.Rptr.2d 269.) Under the statutory scheme in effect immediately prior to approval of Proposition 21, a 14 or 15 year old offender accused of committing certain special forms of murder was presumed unfit for trial as a juvenile. As to those crimes, the juvenile bore the burden of proof to rebut the presumption by showing he or she was amenable to juvenile court treatment based on the five statutory' criteria. (Hicks v. Superior Court, supra, 36 Cal.App.4th at pp. 1656-1657, 43 Cal.Rptr.2d 269.)
Thus, prior to the adoption of section 707(d) as section 26 of Proposition 21, the Legislature provided that in most cases in which a juvenile was accused of a criminal offense, two alternative dispositional schemes-one under the juvenile laws and one under the adult sentencing laws-were available to a court if the allegations of wrongdoing were found true. Unless the juvenile was within the limited set of persons for whom the Legislature made a direct filing in the adult court mandatory, it was the judiciary's function after hearing the evidence and weighing the statutory factors to select which dispositional scheme should apply to the juvenile on conviction.

D. The Impact of Section 707(d)

Proposition 21 gives prosecutors the ability to curtail the judiciary's power to select which dispositional scheme to apply if the juvenile is convicted of a specified qualifying offense.[5] Under section 707(d), for juveniles 16 or 17 years old at the time they commit one or more of the section *146 707(d)'s specified qualifying offenses, or juveniles 14 years old or older at the time they commit one or more of a narrower list of section 707(d)'s specified qualifying offenses, a juvenile court is empowered to determine by way of a fitness hearing whether the particular juvenile should be subject to the adult penalties or should instead be subject to the juvenile court laws only if the district attorney chooses to confer that authority on the juvenile court. However, the district attorney need not give that option to the court:[6] section 707(d) permits the district attorney to prosecute these juveniles as adults in criminal court, and if the district attorney elects to prosecute in adult court and the juvenile is convicted of the charged qualifying offense (or of any other qualifying offense) the court cannot prescribe a juvenile court disposition but must sentence the juvenile as an adult under the adult laws. (Pen.Code, § 1170.17, subd. (a).)

II

ANALYSIS
A. Section 707(d) Violates Separation of Powers Principles by Giving the District Attorney Discretion to Grant or Withhold from the Court the Option to Prescribe a Juvenile Court Disposition
The parties agree that separation of powers principles give the district attorney, as a member of the executive branch, the discretion to make the "charging decisions." Accordingly, the power to determine whether to bring charges, what charges to bring, and against which persons, is within the discretion of the prosecution and the judiciary may neither supervise nor interfere with that discretionary determination. (People v. Birks, supra, 19 Cal.4th at pp. 134-135, 77 Cal.Rptr.2d 848, 960 P.2d 1073.) The parties also agree that, once the charging decisions have been made and the proceedings instituted, separation of powers principles commit to the judiciary the authority over the process leading to conviction or acquittal, and the authority to decide, subject to the legislatively-imposed guidelines, the sentence or other disposition to impose upon a convicted defendant; these judicial functions *147 cannot be controlled by the prosecution. (People v. Tenorio, supra, 3 Cal.3d at p. 94, 89 Cal.Rptr. 249, 473 P.2d 993.)
Whether section 707(d)'s discretionary direct filing provisions transgress the separation of powers principles turns on whether the choice given to the district attorney to file a juvenile court petition or an adult court information is in its nature a charging decision that is properly allocated to the executive branch or is instead a sentencing decision that is properly allocated to the judicial branch and may not be delegated to the executive branch in derogation of the judicial power over sentencing. We conclude that the fundamental nature of the decision given to district attorneys under section 707(d) is a decision that the adult sentencing scheme rather than the juvenile court dispositional scheme must be imposed if the juvenile is found guilty of the charged offenses. Therefore, section 707(d)'s provisions giving the district attorney the power to preemptively veto a court's sentencing discretion violates separation of powers principles.
In People v. Superior Court. (On Tai Ho) (1974) 11 Cal.3d 59, 113 Cal.Rptr. 21, 520 P.2d 405 (On Tai Ho ), the court examined the separation of powers doctrine as developed in People v. Tenorio, supra, 3 Cal.3d 89, 89 Cal.Rptr. 249, 473 P.2d 993, People v. Navarro, supra, 7 Cal.3d 248, 102 Cal.Rptr. 137, 497 P.2d 481 and Esteybar v. Municipal Court, supra, 5 Cal.3d 119, 95 Cal.Rptr. 524, 485 P.2d 1140 to test whether a provision of a statutory scheme for pretrial diversion of certain defendants violated the separation of powers doctrine. Under that scheme, the court was authorized to divert from the normal criminal process persons charged with first-time possession of drugs who were found to be suitable for treatment and rehabilitation. The first step was a preliminary screening for eligibility, conducted by the district attorney under standards prescribed by the statute, to determine whether the defendant met certain minimum standards of eligibility for the diversion program.[7] If the defendant appeared to be eligible under the minimum standards, the matter was referred to the probation department to collect the facts bearing on the particular defendant's suitability for diversion. (On Tai Ho, supra, at pp. 61-62, 113 Cal.Rptr. 21, 520 P.2d 405.)
The second step involved weighing the facts developed by the probation department, as well as other relevant facts, and making a decision to divert the defendant into a rehabilitation program; that decision was vested in the trial court. (On Tai Ho, supra, 11 Cal.3d at p. 63, 113 Cal. Rptr. 21, 520 P.2d 405.) The On Tai Ho court concluded that one provision of the scheme, a statutory provision subjecting the court's ability to order diversion to a prosecutorial veto,[8] violated the separation *148 of powers doctrine. The court noted that, under the standards developed in Tenorio, Esteybar and Navarro, separation of powers principles precluded the Legislature from giving the prosecutor the ability to control or limit the court's dispositional powers after the criminal proceedings had been instituted, and stated at page 65 that "[i]n the light of these precedents it is clear that if the decision to divert a defendant into a rehabilitation program ... is an exercise of judicial power, it cannot constitutionally be subordinated to a veto of the prosecutor." (On Tai Ho, supra, 11 Cal.3d at p. 65.) The On Tai Ho court then turned to the central issue: was the decision to divert an aspect of the charging decisions vested in the prosecution, or an aspect of the process leading to acquittal or sentencing that is vested in the judiciary?
The On Tai Ho court rejected the argument that the decision to divert was a mere extension of the charging process; diversion occurred after the charging decisions had been made and thereafter, "`the process which leads to acquittal or [to] sentencing is fundamentally judicial in nature.'" (On Tai Ho, supra, 11 Cal.3d at p. 65, 113 Cal.Rptr. 21, 520 P.2d 405, quoting People v. Tenorio, supra, 3 Cal.3d at p. 94, 89 Cal.Rptr. 249, 473 P.2d 993.) In On Tai Ho, the People sought to exempt the decision to divert from the types of decisions described as judicial by Tenorio by arguing the decision to divert did not result either in a defendant's acquittal or his sentencing, and a district attorney's refusal to consent to diversion meant only that the defendant would go to trial as charged. The On Tai Ho court rejected this distinction and stated at page 66 that:
"[T]his is reading Tenorio and the present statute too narrowly. [¶] The principle summarized in the quoted language from Tenorio is that when the jurisdiction of a court has been properly invoked by the filing of a criminal charge, the disposition of that charge becomes a judicial responsibility. It is true that acquittal or sentencing is the typical choice open to the court, but in appropriate cases it is not the only termination. With the development of more sophisticated responses to the wide range of antisocial behavior traditionally subsumed under the heading of `crime,' alternative means of disposition have been confided to the judiciary. The most commonly invoked, of course, is probation; and under the rule of the Clay case, the decision to grant probation in the interests of justice is a judicial act within the meaning of the separation of powers doctrine. In turn, civil commitment to the narcotics addict rehabilitation program is a disposition which may be viewed as a specialized form of probation; under Navarro, it too is an exercise of the judicial power.
"The analogy to the program here in issue is clear: diversion may also be viewed as a specialized form of probation, available to a different class of defendants but sharing many similarities with general probation and commitment for addiction. Like those programs, diversion is intended to offer a second chance to offenders ... and the decision to divert is predicated on an in-depth appraisal of the background and personality of the particular individual before the court."
The On Tai Ho court also noted that the nature of the decision to divert, as well as the consequences flowing from the decision to divert, were fundamentally judicial in nature. The decision, the court noted, required a weighing of evidence and a determination of whether the particular defendant was suitable for rehabilitative programs, which were typical of adjudicative acts. Moreover, the consequences flowing from diversion were analogous to the consequences flowing from a successful or unsuccessful period of probation. (On Tai Ho, supra, 11 Cal.3d at pp. 67-68, 113 Cal.Rptr. 21, 520 P.2d 405.) The On Tai Ho court cautioned that the timing of the decision was not determinative of whether *149 the decision was judicial in nature and concluded at page 68:
"Our decision in Esteybar teaches that the issue whether a power is judicial in nature depends not on the procedural posture of the case but on the substance of the power and the effect of its exercise. Here the Legislature's choice of pre-conviction rather than post-conviction intervention is easily understandable.... At whatever stage such intervention occurs, however, it is an integral step in the process leading to the disposition of the case before the court, and therefore constitutes an exercise of judicial authority within the meaning of the constitutional doctrine of separation of powers." (On Tai Ho, supra, 11 Cal.3d at 68.)
The discretionary direct filing decision given to the district attorney under section 707(d) cannot be neatly slotted as either a traditional charging-type decision or a traditional dispositional-type decision. Certainly, the decision to file in adult court bears some resemblance to a charging decision: it occurs before the jurisdiction of a court has been invoked by the filing of a criminal charge, and some types of charging decisions may be accompanied by a choice to seek imposition of more severe punishments upon conviction. (Cf. People v. Kirkpatrick (1994) 7 Cal.4th 988, 1024, 30 Cal.Rptr.2d 818, 874 P.2d 248 [prosecutor has discretion to select, from pool of those eligible cases, which cases it will actually seek death penalty without violating separation of powers].) However, the decision to file in adult court also bears some of the hallmarks of a prohibited prosecutorial control over a court's dispositional decision: it gives the prosecutor the ability to decide which juveniles among the statutorily eligible pool are fit for a juvenile court disposition, and it gives the prosecutor the ability to prevent a court from giving an otherwise eligible and fit juvenile the benefits of a juvenile court disposition.
Because On Tai Ho teaches that whether a power is judicial in nature depends not on when it is exercised but instead depends on "the substance of the power and the effect of its exercise" (On Tai Ho, supra, 11 Cal.3d at p. 68, 113 Cal.Rptr. 21, 520 P.2d 405), we conclude that section 707(d) violates the separation of powers principles by giving the district attorney the unchecked authority to prescribe which legislatively-authorized dispositional scheme will be available to the court if the charges are found true. It is undisputed that, for juveniles who commit a section 707(d) offense (except those for whom a direct filing in the adult court is mandated by section 602, subdivision (b)), the Legislature has provided that alternative sentencing schemes will be available: the juvenile is eligible to be sentenced under either the juvenile court laws or under the adult laws. It is also undisputed that, absent section 707(d), the determination of which scheme will apply requires a particularized, evidentiary hearing to adjudicate the individual juvenile's fitness or suitability for juvenile court treatment, and that these adjudicatory functions are essentially judicial in nature. Because the decision to be made is adjudicatory in nature, and the effect of that decision is a de facto selection among the sentencing alternatives otherwise available to the court, section 707(d) allocates a judicial power and function to the district attorney in violation of the separation of powers.
The People argue that, under Davis v. Municipal Court (1988) 46 Cal.3d 64, 249 Cal.Rptr. 300, 757 P.2d 11, a prosecutor is entitled to make charging decisions without violating the separation of powers even though the decision restricts the court's dispositional alternatives. In Davis, the local diversion program was available only to persons charged with a misdemeanor. The defendant argued that because his eligibility for diversion was conditioned on being charged with a misdemeanor, a prosecutor's discretion to decide whether a wobbler should be charged as either a felony or a misdemeanor eliminated the court's option to order diversion and therefore violated the separation of powers doctrine. *150 (Id. at p. 81.) Davis rejected this claim based on two considerations. First, Davis recognized that diversion programs routinely limit eligibility based on the offense charged. Second, Davis recognized that prosecutors in felony cases almost invariably are presented with facts that, although supporting a felony charge, could also support a misdemeanor charge. (Id. at pp. 81-82.) Davis implicitly recognized that were the defendant's argument accepted, either (1) misdemeanor diversion programs would necessarily be invalid (to preserve the prosecutor's charging discretion) or (2) the prosecutor's discretion to select which crime to prosecute would be severely limited (to preserve the defendant's access to an available diversion program). (Ibid.) The core rationale underlying Davis is that a prosecutor's discretion to choose which of the possible offenses to charge is a function vested in the prosecutor, and such discretion may not be curtailed or controlled merely because the prosecutor's decision will, as an inevitable collateral consequence, narrow a court's dispositional alternatives. (Id. at pp. 82-86, 249 Cal.Rptr. 300, 757 P.2d 11.)
Our reading of Davis leads to the conclusion it is inapplicable to the issues raised by section 707(d). Under section 707(d), a prosecutor makes two distinct and severable decisions. First, the prosecutor examines the facts of the crime to determine what offenses are supported by the facts; it is this charging decision that Davis preserved to the prosecutor. Second, if the prosecutor decides the facts support charging an offense that section 707(d) specifies as a qualifying offense, section 707(d) gives the prosecutor the discretion to make a second and distinct decision: whether to permit the court to make a juvenile law disposition or to limit the court to adult law sentencing.[9] The latter decision is neither an inevitable nor collateral effect of the charging decision and, unlike Davis, preserving the latter decision for the court will not curtail or control the prosecutor's discretion to make his traditional charging determinations. We conclude Davis' separation of powers analysis does not control the separation of powers issue presented by section 707(d).
The People also rely on cases from other states in which the courts are argued to have held that statutes giving a prosecutor discretion to file charges against juveniles directly in adult court did not violate the separation of powers principle and were constitutional.[10] We are convinced, however, *151 that the analyses of those courts are consistent with our conclusion here.
For example, in Hansen v. State (Wyo. 1995) 904 P.2d 811, a statute gave concurrent jurisdiction to both juvenile and adult courts for certain crimes involving juveniles 14 years or older. The juvenile argued that granting the prosecutor the unguided discretion to file in either juvenile or adult court violated separation of powers principles. The court rejected that argument because the statutory scheme permitted the juvenile to seek, and the court to order, that a matter commenced in adult court be transferred back to juvenile court; accordingly, the prosecutor's filing decision placed no restrictions on the court's power to impose a juvenile court disposition. (Id. at pp. 822-823.) The availability of similar retransfer powers convinced the court in Bishop v. State (1995) 265 Ga. 821, 462 S.E.2d 716 that a statute giving the district attorney discretion to file in either juvenile or adult court did not infringe on the judicial power to select the appropriate disposition. In State v. Cain (Fla.1980) 381 So.2d 1361, the statutory scheme permitted minors to be tried as adults if (1) the court concluded they were unfit for juvenile court treatment and ordered them sent to adult court or (2) the district attorney made the discretionary decision to directly file in adult court. (Id. at pp. 1362-1363.) The Cain court concluded, however, that the latter procedure did not restrict the dispositions available to the judiciary because, even were the juvenile convicted in adult court, the judge would determine whether to use the juvenile or adult dispositional schemes by evaluating the same factors and using the same procedures he or she would have originally used to determine whether to send the case filed in juvenile court to adult court. (Id. at p. 1367.) Finally, in People v. Thorpe (Colo.1982) 641 P.2d 935, a discretionary direct file statute was found constitutional because the scheme retained both of the above-described avenues: when a child was directly prosecuted in adult court, the court retained the power "`to make any disposition of the case that any juvenile court would have'" as well as the discretion to remand the case to the juvenile court for disposition. (Id. at pp. 939-940, fn. 4.)
In all of the cases upholding the constitutionality of a discretionary direct filing statute against a separation of powers argument, the prosecution's power to select the forum did not interfere with or restrict the court's dispositional authority; the adult court retained the authority to prescribe a juvenile court disposition, or order the action retransferred to juvenile court, or both.[11] No similar provision exists under section 707(d): if the district attorney files the proceeding in adult court and the juvenile is convicted of the charged qualifying offense, or is convicted of any other offense that would have qualified for direct filing, the court may not select a juvenile court disposition but must sentence the defendant as an adult under the adult laws. (Pen.Code, § 1170.17, subd. (a).) Thus, unlike the statutes considered by the courts in other states, the prosecution's power to select the forum under section 707(d) does interfere with and restrict the court's dispositional authority.

B. The Invalidity of Section 707(d) Does Not Fatally Infect the Balance of Proposition 21

*152 Because we have determined that section 707(d) is invalid, we must determine whether the invalid provision is severable from the balance of Proposition 21.
Section 38 of Proposition 21 contains a severability provision stating that, "If any provision of this act, or part thereof, is for any reason held to be invalid or unconstitutional, the remaining sections shall not be affected, but shall remain in full force and effect, and to this end the provisions of this act are severable." (Voter Information Guide, Primary Elec. (Mar. 2000) text of Prop. 21, p. 131.) In Santa Barbara Sch. Dist. v. Superior Court (1975) 13 Cal.3d 315, 118 Cal.Rptr. 637, 530 P.2d 605, our Supreme Court explained the effect of such a clause by stating at page 331: "Although not conclusive, a severability clause normally calls for sustaining the valid part of the enactment, especially when the invalid part is mechanically severable.... Such a clause plus the ability to mechanically sever the invalid part while normally allowing severability ... does not conclusively dictate it. The final determination depends on whether the remainder ... is complete in itself and would have been adopted by the legislative body had the latter foreseen the partial invalidity of the statute ... or constitutes a completely operative expression of the legislative intent ... [and is not] so connected with the rest of the statute as to be inseparable." (Interior quotation marks and citations omitted.)
There are three criteria for severability: the invalid provision must be grammatically, functionally, and volitionally separable. (Calfarm Ins. Co. v. Deukmejian (1989) 48 Cal.3d 805, 821-822, 258 Cal.Rptr. 161, 771 P.2d 1247.) We conclude section 707(d) is severable under these criteria.
First, section 707(d) is mechanically and grammatically severable. It constitutes a distinct and separate provision of Proposition 21 that can be removed as a whole without affecting the wording of any provision other than section 26 of the initiative.
Second, section 707(d) is functionally severable. The overarching purpose of the bulk of Proposition 21 was to increase the penalties for and consequences of juvenile and gang-related offenses, and to make a larger group of juveniles eligible for treatment as adults. Because the principal purpose of section 707(d) was to provide a procedural mechanism for expediting the processing of the targeted juveniles into the adult system, its removal merely eliminates a procedural avenue while leaving intact the increased penalties and consequences of juvenile and gangrelated offenses.
Third, we believe section 707(d) is volitionally severable because the remainder of the initiative, after deleting the discretionary direct filing provision, would likely have been adopted by the electorate had they foreseen the invalidity of that provision. The voters who enacted Proposition 21 would presumably prefer that the core purpose of changing the penalties and consequences of juvenile and gang-related offenses from those that existed before the initiative was enacted remain operable even though the fitness determinations remain committed to the judiciary. There is no persuasive reason to suppose the discretion given to the prosecutors under section 707(d) was so critical to the enactment of Proposition 21 that the measure would not have been enacted in its absence.
We therefore conclude that section 26 of Proposition 21, including section 707(d), although invalid, is severable from the other provisions of Proposition 21.

DISPOSITION
Let a peremptory writ of mandate issue directing the superior court to vacate its September 12, 2000, order overruling Petitioners' demurrers and to enter a new order sustaining the demurrers. Petitioners shall recover costs in this writ proceeding.
HUFFMAN, Acting P.J., concurs.
*153 NARES, J., dissenting:
The question presented by the petitioners' constitutional challenge to Welfare and Institutions Code[1] section 707, subdivision (d) (hereafter section 707(d)), is this: If the people of the State of California can, as the majority concedes, abolish the juvenile justice system completely, or mandatorily deny access to that system to juveniles of a certain age charged with certain crimes, can the people also take a more moderate approach by enacting Proposition 21, which delegates to the executive branch (i.e., the district attorney) the discretion to determine whether to file charges against juveniles of a certain age accused of particular crimes in juvenile or criminal court? I believe the people of this state have the constitutional power and the right to take such a measured approach to combat serious and violent juvenile crimes. The majority on the other hand believes that the citizens of this state do not.
Because the power of government ultimately resides in the people, the constitutional right of initiative measures is a power reserved by the people, not granted to them. (Cal. Const., art. IV, § 1.) To these ends, "`"[t]he power of initiative must be liberally construed ... to promote the democratic process."'" (Amador Valley Joint Union High Sch. Dist. v. State Bd. of Equalization (1978) 22 Cal.3d 208, 219-220, 149 Cal.Rptr. 239, 583 P.2d 1281.) "[I]t is [the court's] solemn duty jealously to guard the sovereign people's initiative power, `it being one of the most precious rights in our democratic process.' [Citation.] ... [W]e are required to resolve any reasonable doubts in favor of the exercise of this precious right." (Brosnahan v. Brown (1982) 32 Cal.3d 236, 241, 186 Cal. Rptr. 30, 651 P.2d 274, original italics.)
Further, once an initiative measure is passed and enacted into law, its statutory provisions must be construed in a manner favoring their constitutionality. "`If a statute is susceptible of two constructions, one of which will render it constitutional and the other unconstitutional in whole or in part, or raise serious and doubtful constitutional questions, the court will adopt the construction which, without doing violence to the reasonable meaning of the language used, will render it valid in its entirety, or free from doubt as to its constitutionality, even though the other construction is equally reasonable. [Citations.] The basis of this rule is the presumption that the Legislature intended, not to violate the Constitution, but to enact a valid statute within the scope of its constitutional powers.' [Citations.]" (People v. Superior Court (Romero) (1996) 13 Cal.4th 497, 509, 53 Cal.Rptr.2d 789, 917 P.2d 628 (Romero).)[2]
I believe that section 707(d), reasonably and properly construed, and giving all intendments in favor of its constitutionality, does not violate constitutional separation of powers principles.[3]
An analysis of the constitutionality of section 707(d) must begin with the recognition that juveniles do not have a constitutional right to be tried in the juvenile court system. (Hicks v. Superior Court (1995) 36 Cal.App.4th 1649, 1658, 43 Cal.Rptr.2d 269 (Hicks ).) That system is entirely a *154 creature of statute. (In re Jose H. (2000) 77 Cal.App.4th 1090, 1099, 92 Cal.Rptr.2d 228.) Accordingly, the legislative branch may restrict a juvenile's access to the juvenile court system, or even, if it so chooses, eliminate the system entirely. (Hicks, supra, 36 Cal.App.4th at pp. 1657-1661, 43 Cal.Rptr.2d 269.)
Consistent with this power, and in response to the "legitimate public anxiety about the increase in juvenile crime," the Legislature in this state, prior to the passage of Proposition 21, narrowed the scope of availability of juvenile treatment for the most serious juvenile offenders and removed some of the most serious offenses completely from the juvenile system. (Hicks, supra, 36 Cal.App.4th at pp. 1658-1659, 43 Cal.Rptr.2d 269.)[4] For example, the Legislature has identified certain offenses which, if committed by a juvenile of a certain age, eliminate the possibility of juvenile treatment and require prosecutors to automatically file charges in the criminal courts (mandatory direct filing). (See former § 602, as amended by Stats. 1999, ch. 996, § 12.2.) The Legislature also adopted a process for identifying juveniles who do not belong in the juvenile court system, and returning them to the criminal courts. In this process, certain juveniles are, based upon their age, the crime charged and other criteria, presumed unfit to remain in juvenile court. The juvenile must overcome this presumption of unfitness and prove to the court that he or she is fit to remain in juvenile court. (See former § 707, subd. (c), added by Stats. 1975, ch. 1266, § 4, p. 3325;[5]Ramona R. v. Superior Court (1985) 37 Cal.3d 802, 805, 210 Cal.Rptr. 204, 693 P.2d 789.)
In 2000, the people of California, expressing their continued concern and frustration over serious and violent juvenile crime, particularly gang violence, revised the juvenile justice statutes again by passing Proposition 21, which, among other things, amended portions of section 707, as well as other sections of the Welfare and Institutions Code, to further limit access to the juvenile court system for minors charged with the most serious and violent of offenses. Of relevance to our inquiry, section 707(d), as amended by Proposition 21, gives prosecutors the discretion to file charges against juveniles of a certain age, and who commit certain crimes, directly in criminal court or in juvenile court. (§ 707(d)(1)-(3).)
The petitioners, and the majority, do not contend that previous legislative directives that prosecutors must file certain charges against juveniles in criminal court are constitutionally infirm. Nor is there any question that a statutory presumption of unfitness for juvenile court treatment for certain juveniles charged with certain offenses is constitutionally permissible. (Hicks, supra, 36 Cal.App.4th at pp. 1657-1661, 43 Cal.Rptr.2d 269; Sheila O. v. Superior Court (1981) 125 Cal.App.3d 812, 817, 178 Cal.Rptr. 418; People v. Superior Court (Steven S.) (1981) 119 Cal.App.3d 162, 177, 173 Cal.Rptr. 788.) Because a juvenile has no constitutional right to a juvenile court disposition, the Legislature can restrict, qualify or deny the privilege of juvenile treatment as it sees fit. The petitioners contend (and the majority agrees), however, that merely because section 707(d) delegates to prosecutors the discretion to file charges for certain crimes in juvenile or criminal court, it violates *155 the separation of powers doctrine. Such a contention does not withstand scrutiny.
Prosecuting authorities, in determining what charges to file against an individual, or whether to file charges at all, are given largely unfettered discretion that is not subject to judicial supervision. (People v. Birks (1998) 19 Cal.4th 108, 134, 77 Cal. Rptr.2d 848, 960 P.2d 1073 (Birks); Davis v. Municipal Court (1988) 46 Cal.3d 64, 77, 249 Cal.Rptr. 300, 757 P.2d 11 (Davis).) This exercise of discretion is limited only to the extent that it may not be applied in a discriminatory manner. (United States v. Batchelder (1979) 442 U.S. 114, 125, fn. 9, 99 S.Ct. 2198, 60 L.Ed.2d 755.)
The wide discretion given to prosecutors at the charging stage itself derives from the separation of powers doctrine. (Birks, supra, 19 Cal.4th at p. 134, 77 Cal.Rptr.2d 848, 960 P.2d 1073.) Placing such broad discretion in the hands of prosecutors "rests largely on the recognition that the decision to prosecute is particularly ill-suited to judicial review. Such factors as the strength of the case, the prosecution's general deterrence value, the Government's enforcement priorities, and the case's relationship to the Government's overall enforcement plan are not readily susceptible to the kind of analysis the courts are competent to undertake." (Wayte v. United States (1985) 470 U.S. 598, 607, 105 S.Ct. 1524, 84 L.Ed.2d 547.) Thus, the mere fact that a prosecutor must exercise discretion in determining whether to file a charge under section 707(d) in criminal or juvenile court does not render such decision unconstitutional as a violation of separation of powers.
The majority finds a constitutional defect here by characterizing the decision to file in juvenile or criminal court as a "judicial" function, not part of the prosecutor's broad authority to file charges, because the exercise of discretion under section 707(d) impacts whether a juvenile will be subject to juvenile or adult sentencing and disposition. The majority characterizes this as a "veto" of the court's sentencing and dispositional power. (Maj. opn., ante, at p. 147.) This conclusion is unsupportable for several reasons.
First, a fair reading of Proposition 21 and section 707(d) demonstrates that the people of this state enacted a narrow and limited refinement of the juvenile justice system, that has properly delegated to the executive branch at the charging stage the discretion to remove certain juveniles from the juvenile justice system. There is no veto power over a judicial decision here as this discretion is given to prosecutors at the charging stage, and there is no prosecutorial interference with judicial functions once a charge is filed. After a charge is filed in criminal court under section 707(d), the judicial branch retains its traditional power, unconstrained by the executive branch, to make any adult sentencing or dispositional determinations available to it. As with mandatory direct filing, section 707(d) simply removes from the judicial branch, as to a limited class of juveniles, the power to determine that they may be diverted into the juvenile system. If it is a constitutional delegation of power for the legislative branch to require that a prosecutor file charges for certain crimes committed by juveniles in criminal court, it is also constitutional for the legislative branch to delegate to prosecutors the discretion to file charges for certain crimes in juvenile or criminal court.
There is also no legal support for the majority's proposition that section 707(d) violates the separation of powers doctrine. The cases upon which the majority rely (People v. Tenorio (1970) 3 Cal.3d 89, 89 Cal.Rptr. 249, 473 P.2d 993 (Tenorio) & its progeny) for the proposition that section 707(d) violates the doctrine of separation of powers, do not support the majority's conclusion. They all have one fundamental and determinative difference from section 707(d): "[I]n all of those cases the challenged statutory provisions purported to give a prosecutor the right to veto a decision made by a court after criminal *156 charges had already been filed." (Davis, supra, 46 Cal.3d at p. 82, 249 Cal.Rptr. 300, 757 P.2d 11, original italics.)
In Tenorio and its progeny, the constitutional defect arose because the Legislature reserved a power to the judicial branch, but at the same time conditioned its exercise upon approval of the prosecution. (See Tenorio, supra, 3 Cal.3d at p. 95, 89 Cal.Rptr. 249, 473 P.2d 993 [prosecution's veto power over court's decision to dismiss prior offense allegation invalid]; People v. Superior Court (On Tai Ho) (1974) 11 Cal.3d 59, 64-68, 113 Cal.Rptr. 21, 520 P.2d 405 [prosecutor's veto power over a court's decision to divert a defendant charged with a narcotics offense to a treatment and rehabilitation program invalid]; People v. Navarro (1972) 7 Cal.3d 248, 258-260, 102 Cal.Rptr. 137, 497 P.2d 481 [requiring prosecutor's consent before court could sentence a defendant to a treatment program for narcotics addicts]; Esteybar v. Municipal Court (1971) 5 Cal.3d 119, 124-128, 95 Cal.Rptr. 524, 485 P.2d 1140 [prosecutor's veto power over court's treatment of "wobbler" as a misdemeanor rather than a felony invalid].) None of these cases purports to hold that the Legislature cannot delegate to the executive branch the power to make discretionary decisions as part of its charging function before invocation of the jurisdiction of the courts, even if the decisions have a real and substantive effect upon disposition and sentencing.
Davis (supra, 46 Cal.3d 64, 249 Cal. Rptr. 300, 757 P.2d 11) is instructive. There, the high court upheld the constitutional validity of statutes giving local district attorneys the authority to approve or disapprove local diversion programs. The court recognized that under the statutes a prosecutor could deny the availability of diversion by charging a wobbler as a felony rather than a misdemeanor. The court held that this did not violate the separation of powers doctrine, even though it affected the defendant's sentencing and dispositional options, because it was a power exercised prior to invocation of the court's jurisdiction. (Id. at p. 82, 249 Cal.Rptr. 300, 757 P.2d 11.) The Davis court concluded the Tenorio line of decisions was inapplicable as those cases were "concerned with an entirely different kind of interference by the executive with a court's exercise of the judicial function.... None of the cases suggests that the exercise of prosecutorial discretion prior to the filing of such charges improperly subordinates the judicial branch to the executive in violation of the Constitution, even though the prosecutor's exercise of such charging discretion inevitably affects the sentencing or other dispositional options available to the court." (Ibid., original italics.)
The Davis court distinguished Esteybar (supra, 5 Cal.3d 119, 95 Cal.Rptr. 524, 485 P.2d 1140), which also involved the decision to reduce a charge from a felony to a misdemeanor, by noting that in that case the court was presented with a prosecutor's veto power over a judicial decision made after charges had been filed: "Thus, Esteybar expressly emphasized the timing of the exercise of prosecutorial discretion as a crucial factor in the Tenorio analysis. All of the subsequent cases applying Tenorio to invalidate legislative provisions have similarly involved statutes which authorized the exercise of a prosecutorial veto after the filing of criminal charges, when the criminal proceeding has already come within the aegis of the judicial branch. [Citations.]" (Davis, supra, 46 Cal.3d at p. 83, 249 Cal.Rptr. 300, 757 P.2d 11, original italics.)
Thus, Davis teaches us two things. First, timing is critical to a separation of powers analysis. If the challenged statute involves an exercise of prosecutorial discretion prior to the invocation of the court's jurisdiction, the separation of powers doctrine simply does not comes into play. Second, the nature of the prosecutor's exercise of discretion, whether it would traditionally be viewed as a "judicial" or "prosecutorial" action, is not the focus. For example, in Davis, the court *157 analyzed the discretionary power of a prosecutor to reduce a felony to a misdemeanor, and declared such authority constitutional when exercised at the charging stage, but unconstitutional if exercised as a veto power over a court's decision after jurisdiction of the court is invoked.
The majority's quote from On Tai Ho (supra, 11 Cal.3d at p. 68, 113 Cal.Rptr. 21, 520 P.2d 405) that "the issue whether a power is judicial in nature depends not on the procedural posture of the case but on the substance of the power and the effect of its exercise," does not help their conclusion that section 707(d) is unconstitutional. In making that statement, the court in On Tai Ho was merely stating that for purposes of defining an action as "judicial" it mattered not whether the power was exercised pre- or post-conviction, both of which are stages that occur after invocation of the court's jurisdiction. (On Tai Ho, supra, at pp. 67-68, 113 Cal.Rptr. 21, 520 P.2d 405.) The court in On Tai Ho in no way intimated that in a separation of powers analysis we ignore whether the particular power is exercised before or after invocation of the court's jurisdiction. In fact, as the court in Davis held, this issue is "crucial" to a separation of powers analysis. (Davis, supra, 46 Cal.3d at p. 83, 249 Cal.Rptr. 300, 757 P.2d 11.)
The high court's most recent analysis of the separation of powers doctrine and a prosecutor's discretionary powers in Romero, supra, 13 Cal.4th 497, 53 Cal. Rptr.2d 789, 917 P.2d 628, also supports the conclusion that section 707(d) is constitutional. There again, the Romero court recognized that (1) the Legislature and electorate may take away judicial power to make sentencing determinations, and (2) it is only where the Legislature has reserved such power in the judiciary, but subjected it to prosecutorial approval, that a separation of powers issue is implicated. (Id. at p. 516, 53 Cal.Rptr.2d 789, 917 P.2d 628.)
Likewise, in the case of section 707(d), the separation of powers doctrine is not at issue because the people of this state have abolished juvenile court disposition as to juveniles who meet certain criteria. There can be no prosecutorial "veto" of a judicial sentencing or disposition determination under section 707(d), because the judiciary does not have the power to make such a determination in the first place.
Accepting for the moment the majority's proposition that discretionary actions by a prosecutor made at the charging stage could be deemed an improper exercise of "judicial" power under some circumstances, such is not the case with the authority delegated by the legislative branch to prosecutors under section 707(d). Section 707(d) gives much less discretionary authority to the prosecution that could be labeled judicial action than the statute found constitutional in Davis. In Davis, the prosecutors were allowed unbridled discretion to charge a wobbler as a felony or misdemeanor, and thereby decide whether a defendant was eligible for diversion or subject to criminal penalties, without any statutory criteria or standards. (Davis, supra, 46 Cal.3d at pp. 89-96, 249 Cal.Rptr. 300, 757 P.2d 11 (cone. & dis. opns. of Mosk, J. & Kaufman, J).)
Here, by contrast, under Proposition 21 prosecutors may only file a charge in criminal court under section 707(d) if the juvenile meets certain statutory criteria (e.g., 16 years of age and charged with murder (without special circumstances); 14 years old and personally used a firearm in the commission of a felony, etc.). (See § 707(d)(1) & (2)). The legislative branch has determined that if a juvenile meets the statutory criteria of section 707(d), he or she is deemed fit as a matter of law for processing through the criminal court system, including sentencing and disposition. The prosecution does not make any "fitness" determination that could be labeled a "judicial" function. The legislative branch accomplishes this, in advance, by enumerating the criteria under which a juvenile may be prosecuted in criminal court.
*158 Nor do I believe that the decision of a prosecutor to file an action against a juvenile who meets the criteria of section 707(d) in the criminal court or juvenile court goes beyond traditional notions of what are "charging" powers. I view the exercise of discretion under section 707(d) as akin to a prosecutor's decision whether or not to charge an individual at all with a particular crime. All the statute does is allow the prosecutor to choose to prosecute a juvenile who meets section 707(d)'s criteria in criminal court, or not, and file in juvenile court. As I have already discussed, the fact that the exercise of this discretionary power impacts sentencing or dispositional options is of no moment. Anytime a prosecutor exercises his or her discretion to charge a certain crime over another, sentencing and disposition are directly, and sometimes severely, impacted. This fact does not make the prosecutor's decision constitutionally infirm or turn it into an improper exercise of a "judicial" function.
The basic flaw in the majority's analysis is shown when it is applied to the mandatory direct filing portions of section 707 that require a prosecutor to file certain charges against juveniles in criminal court. In applying the mandatory direct filing section, prosecutors have the power and discretion to charge the individual with a crime that would require filing in criminal court, or elect to file a lesser charge that would subject the minor to only a juvenile disposition, or at least a hearing to determine if the minor is fit to be processed in the juvenile justice system. No one argues that such discretion, although its exercise decides whether a juvenile is subject to criminal sentencing and disposition or those of the juvenile courts, is unconstitutional.
Indeed, imposition of mandatory direct filing in criminal court, which is admittedly constitutional, eliminates much more of a court's sentencing or dispositional authority and is much more severe in its application. The people of this state are constitutionally permitted to completely eliminate availability of the juvenile system for certain juveniles. The majority tells us, however, that the people cannot take the measured approach of allowing the prosecution to decide, as to juveniles who meet certain narrow criteria (i.e., age and serious or violent felony), whether to file charges in juvenile or criminal court. If this is the law, and the people are not allowed to delegate such limited discretion to prosecutors, the people of this state may well decide that their only recourse is to include all serious and violent crimes in the mandatory direct file system or eliminate the juvenile system as a whole. The people of this state have enacted a law that is a narrow and focused limitation upon the availability of the juvenile justice system to juveniles who meet certain statutory criteria. Such a reasoned and balanced approach does not violate the constitution, particularly given the fact that juveniles have no constitutional right to a juvenile justice system at all.
As the majority recognizes, several out-of-state cases have upheld against constitutional challenge statutes giving prosecutors the discretion to file certain charges against juveniles in either criminal or juvenile court. (Hansen v. State (Wyo.1995) 904 P.2d 811, 817-20; Bishop v. State (1995) 265 Ga. 821, 462 S.E.2d 716, 717; State v. Cain (Fla.1980) 381 So.2d 1361, 1363-1366; People v. Thorpe (Colo.1982) 641 P.2d 935, 938-940.) The majority attempts to distinguish these cases on the basis that the challenged statutes all provided for a discretionary remand to the juvenile system by the court after the court process had been initiated. However, none of these cases held that the statutes at issue survived a separation of powers challenge because of such a remand provision. (Hansen, supra, at pp. 817-820; Bishop, supra, at p. 717; Cain, supra, at pp. 1363-1366; Thorpe, supra, at pp. 938-940.) Rather, the cases that addressed a separation of powers challenge held that there was no constitutional infirmity *159 simply because the exercise of discretion by a prosecutor in deciding to file charges in criminal or juvenile court was not a judicial act. The fact that the statutes contained remand provisions quite simply had no bearing on the separation of powers analysis in those cases. (Hansen, supra, at pp. 817-820; Bishop, supra, at pp. 717-718; Cain, supra, at pp. 1363-1367.) Accordingly, the above-cited out-of-state cases provide additional and strong authority for the conclusion that section 707(d) is a proper delegation of prosecutorial charging authority that does not violate the separation of powers doctrine.
For all of the foregoing reasons, I would uphold the constitutionality of section 707(d), and affirm the court's September 2000 order overruling petitioners' demurrers.
NOTES
[1] All further statutory references are to the Welfare and Institutions Code unless otherwise specified.
[2] For a specific group of 16 and 17 year old juveniles, the prosecution was required to file directly in adult court. The mandatory direct file applied if the juvenile (1) had been declared a ward of the court for prior felonies committed after he was 14 and (2) the new charge alleged he committed one or more of a list of serious offenses. (§ 602, subd. (b). Additionally, if a juvenile had previously been (1) convicted in adult court of an offense that resulted in a finding of unfitness, or (2) found unfit based on his prior delinquent history or lack of success in rehabilitation, under certain circumstances the prosecutor could directly file certain new charges against the juvenile in adult court. (§ 707.01.)
[3] For most offenses, first-time offenders were presumed fit for juvenile court treatment, and the prosecution had the burden of proof at the fitness hearing to show the juvenile was not amenable to the care, treatment and training in juvenile court based on an assessment of five statutory criteria. (Ramona R. v. Superior Court (1985) 37 Cal.3d 802, 805, 210 Cal. Rptr. 204, 693 P.2d 789.) However, for some offenders and some serious offenses, it was presumed the juvenile was unfit for treatment in juvenile court; the burden was then on the juvenile to convince the juvenile court otherwise based on each of five statutory criteria. (Former § 707, subd. (c); Ramona R. v. Superior Court, supra, 37 Cal.3d at 805.)
[4] The criteria to be considered by the court in making its fitness assessment are (1) criminal sophistication, (2) necessary period for rehabilitation, (3) previous delinquent history, (4) past rehabilitative efforts and (5) the seriousness of the offense. (§ 707, subd. (a); Cal. Rules of Court, rule 1482(a).)
[5] Section 18 of Proposition 21 also expanded the set of juveniles for whom a direct filing in the adult court is mandatory by amending the provisions of the mandatory direct filing statute, section 602, subdivision (b). First, it lowers from 16 to 14 the age a juvenile can qualify for mandatory direct filing of criminal charges. Second, it eliminates the requirement that the juvenile be previously declared a ward of the court for prior felonies committed after age 14. Finally, it adds one qualifying offense (i.e. violation of Penal Code section 288, subdivision (a) unless the defendant qualified for probation under Penal Code section 1203.066, subdivision (c)) while apparently deleting other crimes from the list of qualifying offenses. (Compare former § 602, subd. (b) [1999 Stats., ch. 996] with § 602, subd. (b), added by initiative, Gen. Elec. (March 7, 2000) [Proposition 21].) Petitioners concede that expanding the category of persons for whom a direct filing in the adult court is mandatory does not violate the constitutional principle of separation of powers.
[6] The ability of the prosecutor to preempt the fitness hearing is at the core of Petitioners' due process argument. They claim that under Kent v. United States (1966) 383 U.S. 541, 86 S.Ct. 1045, 16 L.Ed.2d 84 a minor who is eligible for treatment under the juvenile laws has a due process right to a fitness hearing before he can deprived of treatment as a juvenile; therefore section 707(d) violates due process by permitting a prosecutor to file directly in adult court without a fitness hearing. However, Kent did not hold that juveniles have a due process right to treatment under the juvenile laws; instead, it held only that when a statute confers a right to a judicial determination of fitness, the due process clause guarantees that determination will be made in compliance with the basic procedural protections afforded similar judicial determinations. (Woodard v. Wainwright (5th Cir. 1977) 556 F.2d 781, 784-787 [although judicial waiver of juvenile laws requires due process, no similar requirement where statute permits discretionary direct filing decision by prosecutor].) Thus, when a juvenile commits a crime that makes him statutorily eligible to be charged either as an adult offender or under juvenile delinquency laws, Kent does not require a hearing before a prosecutor elects to charge him as an adult rather than under the juvenile delinquency laws, even though the prosecutor's action has the same effect as a judicial waiver of juvenile treatment. (Cox v. United States (4th Cir. 1973) 473 F.2d 334, 335-336; United States v. Bland (D.C.Cir.1972) 472 F.2d 1329, 1335-1337.) Because there is no constitutional requirement that juveniles who commit a section 707(d) qualifying offense be eligible for treatment as a juvenile, a statute allowing a prosecutor to proceed directly in adult court without a prior fitness hearing would not appear to deprive the minor of any right guaranteed by the due process clause.
[7] In Sledge v. Superior Court (1974) 11 Cal.3d 70, 113 Cal.Rptr. 28, 520 P.2d 412, a companion case to On Tai Ho, the court evaluated whether placing the preliminary determination of eligibility in the hands of the district attorney also violated the separation of powers. In Sledge, the court concluded the eligibility determination did not vest in the district attorney the power to make a final adjudicative determination. First, because the Legislature had prescribed the criteria for eligibility, the district attorney needed only to gather information, and did not need to decide materiality or relevance of the information, and was not called upon to assess the credibility or weigh the effect of the facts. (Id. at p. 74, 113 Cal.Rptr. 28, 520 P.2d 412.) Second, the court noted that there was a potential for judicial review of an erroneous eligibility decision, and required the district attorney to accompany any determination of ineligibility with a statement of the grounds of ineligibility and the evidence relied on for the determination. (Id. at pp. 75-76 and fn. 6, 113 Cal. Rptr. 28, 520 P.2d 412.)
[8] The statute declared the case could not be diverted "`unless the district attorney concurs'" with the court's decision to do so, and reiterated the criminal proceedings would be resumed if the district attorney did not consent to the order of referral. (On Tai Ho, supra, 11 Cal.3d at p. 63, 113 Cal.Rptr. 21, 520 P.2d 405.)
[9] Petitioners claim this election violates their state and federal equal protection rights, as well as the substantially identical protections afforded by the "uniform operation of laws" clause of the California Constitution (Durham v. City of Los Angeles (1979) 91 Cal.App.3d 567, 575, 154 Cal.Rptr. 243), because the statute provides differential treatment for similarly situated juveniles (e.g. minors who have committed the same crimes) based on discretionary decisions by prosecutors to select between filing a juvenile or an adult proceeding. Petitioners argue that strict scrutiny should be applied because the classifications infringe on their constitutionally protected liberty interest, and the statute fails under strict scrutiny because the state cannot demonstrate the classifications are necessary to further a compelling state interest. (See, e.g., People v. Nguyen (1997) 54 Cal.App.4th 705, 715-716, 63 Cal.Rptr.2d 173.) Although it is unnecessary to examine Petitioners' equal protection arguments in detail, there appear to be flaws in Petitioners' claim. First, the statute does not treat similarly situated juveniles differently: all juveniles who have committed qualifying offenses are equally subjected to the prosecutors' discretionary decisions. Second, to the extent there exists disparate treatment of minors who have committed the same crime, it is the result of the filing decisions of individual prosecutors. However, this court has previously held that, absent proof the disparity in charging is based on race or other impermissible factors, disparities among prosecutors in their charging decisions do not violate equal protection. (People v. Andrews (1998) 65 Cal. App.4th 1098, 1102-1104, 76 Cal.Rptr.2d 823.) Finally, even were we to test the statutory classification under the equal protection clause, we would not apply strict scrutiny; instead, we would employ the so-called "rational relationship" test under the rationale articulated by this court in Hicks v. Superior Court, supra, 36 Cal.App.4th 1649, 43 Cal. Rptr.2d 269.
[10] We are cited only one case, State v. Mohi (Utah 1995) 901 P.2d 991, in which a discretionary direct filing statute analogous to section 707(d) was held unconstitutional. Although the Mohi defendants' challenges to the constitutionality of the statute included a separation of powers argument, the Utah Supreme Court expressly declined to reach that issue because it concluded the statute was invalid for the separate reason that it violated Utah's "uniform operation of laws" constitutional provision. (Id. at p. 1004, fn. 21.)
[11] The final case cited by the People, State v. Grayer (1974) 191 Neb. 523, 215 N.W.2d 859, is silent on whether its discretionary direct filing statute provided for either a court-ordered retransfer or permitted the adult court to elect to impose a disposition under the juvenile laws. However, the silence is understandable because the defendant in Grayer did not raise, and the court did not discuss, the separation of powers issue.
[1] All further statutory references are to the Welfare and Institutions Code unless otherwise specified.
[2] Whether a statute is enacted through initiative process or through the Legislature, it is considered a power exercised by the legislative branch of government. (See Bagley v. City of Manhattan Beach (1976) 18 Cal.3d 22, 26, 132 Cal.Rptr. 668, 553 P.2d 1140.) Accordingly, references in this dissent to the "legislative branch" apply equally to actions taken by the people through the initiative process and laws enacted by the Legislature.
[3] I do not address the petitioners' other constitutional challenges based upon due process, equal protection, and uniform operation of laws, as I agree with the majority that these constitutional challenges lack merit. (Maj. opn., ante, at p. 146, fn. 6, 150, fn. 9.)
[4] Several other states have also recently narrowed and limited access to the juvenile court system. (See Ariz.Rev.Stat. Ann. §§ 8-302, 13-501(B); Ark.Code Ann. § 9-27-318; Colo. Rev.Stat. Ann. § 19-2-517; D.C.Code Ann. § 16-2301(3); Fla. Stat. Ann. § 985-227; Ga. Code § 15-11-28; La. Children's Code Ann. art. 305; Mass. Gen. Laws Ann. ch. 119, § 54; Mich. Comp. Laws Ann.. § 600.606; Mont. Code Ann. § 41-5-206; Neb.Rev.Stat. § 43-247; Okla. Stat. Ann. tit. 10, §§ 7306-2.12; Vt. Stat. Ann. tit. 33, § 5505; Va.Code Ann. § 16.1-269.1C; Wyo. Stat. Ann. § 14-6-203.)
[5] Proposition 21 retained section 707, subdivision c, but amended it to reduce the age of juveniles coming under its provisions from 16 to 14 years of age.